Erik Frank HILL, Plaintiff,

v.

BOARD OF TRUSTEES OF MICHIGAN STATE UNIVERSITY and Lee N. June, Defendants.

No. 5:01–CV–5.

United States District Court,
W.D. Michigan,
Southern Division.

Nov. 16, 2001.

George V. Warren, Lansing, MI, for plaintiff.

Michael J. Kiley, East Lansing, MI, for defendants.

### *OPINION*

QUIST, District Judge.

Plaintiff, Erik Hill ("Hill"), filed a claim under 42 U.S.C. § 1983 against Defendants, Michigan State University ("MSU") and Lee June ("June"), Vice President for Student Affairs and Services, following his suspension as a student from MSU in April 1999. Defendants now move this Court for summary judgment. The Court has concluded that oral argument is not necessary to resolve the issues presented.

### *Facts*

Hill enrolled at MSU as a freshman in the Fall of 1998. On March 16, 1999, he was placed on "warning probation" for two semesters after he violated residence hall policies on alcohol consumption by minors and the duty not to interfere with people reporting rule infractions. (Discipline Rep., Defs.' Br. Supp. Ex. 1.) On March 27, 1999, Duke University defeated MSU in the "Final Four" of the NCAA men's basketball tournament. Thousands of people, including Hill, rioted immediately adjacent to the MSU campus in East Lansing that night after the loss. Hill admits to being present at a large fire, helping rock a van

in the street, and kicking a public telephone. (Hill Dep. at 24–26, Defs.' Br. Supp. Ex. 5; letter from Hill to Hansen of 4–26–99 at 2–4, Defs.' Br. Supp. Ex. 3.) The police caught Hill's actions on video tape, and he was arrested on April 12, 1999, for inciting to riot, a felony. (Police Rep., Defs.' Br. Supp. Exs. 6, 7.) The police notified Defendant June of Hill's participation in the riots. By letter dated April 16, 1999, June placed Hill on temporary suspension, pursuant to Section 4.3.7 of MSU's *Academic Freedom for Students at Michigan State*, which provides,

> When the Vice President for Student Affairs and Services, at his/her discretion, believes there is reasonable cause that a student's continued presence at Michigan State University constitutes a clear and present danger to the health or safety of persons or property, the Vice President for Student Affairs and Services or his/her designee may temporarily suspend a student pending final resolution of the matter. The interim suspension shall not preclude, predetermine, or render irrelevant subsequent disciplinary action or procedures; nor shall an interim suspension create a presumption of guilt.

(Letter from June to Hill of 4–16–99, Defs.' Br. Supp. Ex. 9.) This letter from June to Hill told Hill that he was suspended because of his "actions on March 27, 1999, as described in the enclosed report...." Presumably, the "enclosed report" was the police report of the incident. Of the thousands who participated in this riot, Hill was selected for immediate suspension because June thought that Hill acted in an especially provocative fashion, not just as a member of the crowd, and because only two weeks prior Hill had been placed on disciplinary probation due to an alcohol related offense. (June Aff. ¶ 15, Defs.' Br. Supp. Ex. 2.)

Pursuant to established procedure, Hill petitioned for reinstatement to the Student–Faculty Judiciary and appeared with counsel at a hearing on April 21, 1999. (Hill Dep. at 29.) Before the hearing began, members of the panel met with the charging police officer outside of Hill's presence for approximately thirty minutes. (*Id.* at 31.) At the hearing, the police officer showed the videotape to Hill and the panel, and Hill's counsel questioned the officer regarding the events on the tape. (*Id.* at 30–32, 44.) Hill received a phone call a day or two after the hearing notifying him that his appeal had been denied. (*Id.* at 33.)

Hill appealed the denial to June on two different occasions. (*Id.* at 39–43.) For the second appeal, he faxed a letter to Marie Hansen of the Office of Student Affairs and Services, explaining the events of March 27, expressing his regret, and requesting to be reinstated into the University. (*Id.* at 37–38; letter from Hill to Hansen of 4–26–99, Defs.' Br. Supp. Ex. 3.) Both appeals were denied. June denied the appeals because he believed that the hearing panel was fair, impartial, and thorough, because of the serious nature of Hill's riot activity, Hill's admitted use of alcohol shortly after being put on probation for using alcohol, and June's belief that Hill had not taken responsibility for his behavior. (June Aff. ¶ 18.) In addition, June believed that Hill, already on probation for an alcohol policy violation, was likely to participate in anticipated parties on campus that spring. (*Id.*) Hill was notified of these decisions. Although he may do so, Hill has not communicated with anyone at MSU regarding reinstatement since April 1999. (Hill Dep. at 16, 48.) Hill pled guilty in state court to "inciting to riot or unlawful assembly." He spent about 30 days in jail.

Hill filed this action under 42 U.S.C. § 1983 alleging violations of his substantive and procedural due process rights. He claims that his constitutional rights

were violated when Defendants disciplined him for off-campus behavior in contravention of school policy, failed to identify which policy or regulation he allegedly violated, and deprived him of the right to be heard by an unbiased judicial body. Hill seeks restitution of his room, board, and tuition payments to MSU, injunctive relief reinstating him at the University and purging his record of the incident, and punitive damages.

Defendants argue that MSU, as a state entity, cannot be sued because it is not a "person" subject to suit under § 1983. Defendants further argue that June is protected by qualified immunity and therefore not subject to suit.[1]

### Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *See id.* The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992)(quoting *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### Discussion

The parties do not dispute the material facts. The only question for the Court, then, is whether those facts rise to the level of a due process violation.

### I. Defendant MSU

 MSU asserts that it is immune from suit under the Eleventh Amendment, which bars suits against states and state agencies, whether the action is for damages or injunctive relief. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 56, 116 S.Ct. 1114, 1124, 134 L.Ed.2d 252 (1996); *Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir.1999). This Court agrees. MSU is a state entity which the state legislature supports through appropriations. Mich. Const. Art. 8, § 4. Any judgment against MSU will be paid out of the state's tax revenues. M.C.L. § 600.6095. Courts within this district have held that MSU is an "arm of the state" entitled to Eleventh Amendment immunity. *Williams v. Mich. State Univ.*, No. 1:93–CV–72, 1994 WL 617272, at *4 (W.D.Mich. Jan.3, 1994); *Weisbord v. Mich. State Univ.*, 495 F.Supp. 1347, 1355 (W.D.Mich.1980). In addition, as a state entity, MSU is not a "person" subject to suit for damages under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

Hill's reliance on the doctrine of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), is misplaced. That doctrine allows prospective injunctive relief

---

1. In his original complaint, Hill named June as a defendant in his official capacity as an officer of MSU. A suit against a state official in his official capacity is no different than a suit against the state itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109

S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). In its Case Management Order of March 20, 2001, the Court granted Hill leave to amend his complaint to name June in his individual capacity. (docket no. 6.)

against a state official sued in his official capacity. *Lawson v. Shelby County*, 211 F.3d 331, 335 (6th Cir.2000). Hill is suing June in his individual capacity, not his official capacity. Even so, the exception to Eleventh Amendment immunity provided in *Ex Parte Young* does not permit a suit against a state or a state entity.

MSU will be granted summary judgment on Hill's claims.

## II. Defendant June

■■■ Since June is a defendant in his individual capacity, he is a "person" under § 1983 and thus subject to suit. *Hafer v. Melo*, 502 U.S. 21, 31, 112 S.Ct. 358, 365, 116 L.Ed.2d 301 (1991). June asserts the defense of qualified immunity, which is " 'an entitlement not to stand trial or face the other burdens of litigation ... an *immunity from suit.*' " *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)(quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)). The two-step inquiry for the Court when analyzing the assertion of qualified immunity is (1) whether a constitutional right would have been violated on the facts alleged and, if so, (2) whether the right was clearly established. *Id.* 121 S.Ct. at 2155. In order to be "clearly established the contours of the right must be sufficiently clear that a reasonable official would understand that his or her conduct violates that right." *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991). To be clearly established, a right must have been decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged violation occurred. *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir.2001).

### A. Whether Hill's due process rights were violated

In his complaint, Hill alleges violations of both substantive and procedural due process. He claims that failure to tell him which university policy he violated and failure to give him notice prior to his suspension deprived him of his substantive due process rights. (Compl.¶¶ 42–44.) He also claims that undue delay in giving him a hearing and failure to provide a written opinion on the decision denying his appeal violated his right to procedural due process. (*Id.* ¶¶ 46–47.) The question for the Court is whether the facts alleged, taken in the light most favorable to Hill, show that June's conduct violated a constitutional right. *Saucier*, 121 S.Ct. at 2156. If not, there is no need for further inquiry into whether that right was clearly established. *Id.*

### 1. Substantive due process

■■■ Substantive due process rights are those "fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition.' " *Washington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772 (1997)(citing *Moore v. City of East Cleveland*, 431 U.S. 494, 503, 97 S.Ct. 1932, 1938, 52 L.Ed.2d 531 (1977)). They are those rights "implicit in the concept of ordered liberty," such as the right to marry, to have children, to use contraception, and to rear and educate one's children. *Id.* (citations omitted). When analyzing an official's conduct, the Court will find a substantive due process violation if the acts were "unreasonable and arbitrary and 'may not take place no matter what procedural protections accompany them,' or the conduct 'shocks the conscience.' " *Harris v. City of Akron*, 20 F.3d 1396, 1405 (6th Cir.1994)(quoting *Wilson v. Beebe*, 770 F.2d 578, 586 (6th Cir.1985)(en banc)).

■■■ The Sixth Circuit has recognized that the right to attend public high school is not a fundamental right for purposes of

substantive due process analysis. *Seal v. Morgan,* 229 F.3d 567, 575 (6th Cir.2000). The right to a public college education and the right to receive notice prior to suspension are even less fundamental. Moreover, June's decision to suspend Hill, given his participation in the riot and his previous disciplinary probation, was not unreasonable, arbitrary, or shocking, nor does Hill argue it to be. Hill's factual allegations do not amount to a violation of substantive due process rights.[2]

June will be granted summary judgment on the substantive due process claim.

## 2. Procedural due process

█ Hill also alleges that the suspension procedure violated his procedural due process rights. In order to make out such a claim, Hill must show (1) a deprivation of liberty or property and (2) lack of notice and a hearing. *Harris,* 20 F.3d at 1401. Courts have held that, as a public university student, Hill has a protected property interest in continuing his education. *See*

*Picozzi v. Sandalow,* 623 F.Supp. 1571, 1576 (E.D.Mich.1986)(collecting cases). Hill's suspension may also implicate his liberty interest in his reputation. *See Goss v. Lopez,* 419 U.S. 565, 574–75, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). But it is not clear that a university student has a property interest in continuing his studies. In *Megenity v. Stenger,* 27 F.3d 1120 (6th Cir.1994), a Sixth Circuit panel said that a magistrate judge's reliance upon *Ewing v. Board of Regents of Univ. of Michigan,* 742 F.2d 913 (6th Cir.1984), *rev'd,* 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985), to find a clearly established substantive and procedural due process right in continuing his studies was "misplaced." A majority of the panel said that it disagreed with the magistrate judge's conclusion as to the existence of a clearly established right "because of the manner in which the Supreme Court addressed our decision in *Ewing* on appeal."[3] *Id.* at 1124. The panel majority said that the Supreme Court's reversal of

---

**2.** Hill fails to cite any case holding that a university violates the Constitution by suspending a student for off-campus acts. This Court doubts such a case exists because universities typically take into consideration many off-campus acts in deciding whether to admit or retain a student. For example, if a student sold drugs across the street from campus, or committed arson one block from campus, such acts could certainly be taken into account in determining whether to retain a person on campus. These acts raise legitimate concern, even fear, as to the safety of the property and persons on campus-i.e., if he does it off-campus, he is as likely to do it on campus. Likewise, encouraging fires, rocking vehicles, and kicking telephone booths, even though occurring off-campus, shows a disregard for the property and safety of others that raises a legitimate concern as to the safety of the property and persons on-campus. This concern is substantially heightened if the perpetrator was already placed on probation for having violated university rules. To the extent that MSU violated its own rules or even state law, such a violation is not cogniza-

ble under § 1983. Defendants' alleged failure to comply with the administrative rules does not itself rise to the level of a constitutional violation. *Barber v. City of Salem,* 953 F.2d 232, 240 (6th Cir.1992); *McVeigh v. Bartlett,* No. 94–23347, 1995 WL 236687 at *1 (6th Cir. April 21, 1995)(failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). A state's failure to comply with its own law, rule or regulation does not by itself state a claim under § 1983. *Smith v. Freland,* 954 F.2d 343, 347–48 (6th Cir.), *cert. denied,* 504 U.S. 915, 112 S.Ct. 1954, 118 L.Ed.2d 557 (1992); *Barber v. City of Salem,* 953 F.2d 232, 240 (6th Cir.1992).

**3.** *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) does not establish a right to a university education. The high school students who sued in *Goss* plainly had, on the basis of state law, "legitimate claims of entitlement to a public education." Hill has not pointed this Court to any similar "entitlement" to a college or university education.

*Ewing* sufficiently undercut the central holding of the Sixth Circuit "so that our decision in *Ewing* becomes tenuous authority for the conclusion reached by the magistrate judge." *Id.* at 1123. The panel points out that *Ewing assumed* the existence of a property interest in continued enrollment. The Supreme Court did not *decide* that Ewing had a property right in continued enrollment, and the Sixth Circuit would not "rush in where the Supreme Court feared to tread in *Ewing.*" *Id.* at 1124–25. The Sixth Circuit then analyzed the procedure utilized to dismiss the plaintiff (Megenity) for academic reasons and found it was not arbitrary and capricious.

Nonetheless, following the Supreme Court's lead in *Ewing* and the Sixth Circuit's lead in *Megenity,* this Court will assume that a university student like Hill has a property interest in continued enrollment at MSU. For the purposes of the pending motion only, this Court assumes that Hill has satisfied the first element of his procedural due process claim.

Regarding the second element of procedural due process, the Supreme Court stated in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), that "[a]ll that is necessary is that the procedures be tailored in light of the decision to be made, to the 'capacities and circumstances of those who are to be heard' to insure that they are given a meaningful opportunity to present their case." *Id.* at 348–49, 96 S.Ct. at 909 (citing *Goldberg v. Kelly,* 397 U.S. 254, 268–69, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970)). Hill received notice of the reason for his suspension in June's April 16 letter which included a copy of the incident report. June's letter also told Hill that his presence on campus constituted a "clear and present danger" to the health and safety of the campus community. Hill did not, however, receive any kind of hearing before the suspension was implemented.

All that Hill received at this time was notice that the suspension would remain in effect until such time as he petitioned for reinstatement. Hill was given a copy of policies which showed him how to petition for reinstatement. He then exercised his right to petition for reinstatement.

On April 21, 1999, Hill, accompanied by counsel, attended a hearing before the Student Faculty Judiciary, a panel of six students and five faculty members. (§ 4.5.2.1, *Academic Freedom for Students at Michigan State,* attached to Compl.) At the hearing, Hill was shown videotapes of his activities on March 27. Hill was represented by his lawyer. One or two days after the hearing, Hill received notification by phone that his appeal for reinstatement was denied. His subsequent appeals to June and Hansen were also denied, and Hill has not sought reinstatement since April 1999.

■ Hill makes two complaints regarding the procedure. First, he claims that the appeals panel lacked impartiality and, thus, he was not afforded due process. The only support Hill offers for this claim is that the panel met with the police officer out of Hill's presence for thirty minutes prior to the hearing. The record shows, however, that Hill and his counsel met with the panel for over two hours, were allowed to present their case, and questioned the officer regarding the police videotape of the riot. Furthermore, in a university setting, a disciplinary committee is entitled to a presumption of honesty and integrity, absent a showing of actual bias. *See Ikpeazu v. Univ. of Neb.,* 775 F.2d 250, 254 (8th Cir.1985). Hill has failed to raise a genuine issue as to the Student Faculty Judiciary's impartiality. He has not proffered any evidence of actual bias. Therefore, in this Court's judgment, Hill has failed to raise any genuine issue of material fact regarding his suspension after April 21, 1999.

Hill also claims that he should have been given notice and a hearing prior to the suspension on April 16. He claims that the post-deprivation hearing was not enough to afford him due process, especially since his second and third appeals were to June, the very official who suspended him. It is unclear whether Hill claims that the cumulative effect of MSU's acts triggered by the April 16 letter violated procedural due process or he makes a separate claim for his suspension between April 16 and April 21.

As this Court has determined, due process was afforded to Hill at the April 21 hearing and thereafter. After April 16, Hill made two appeals to June, one of which involved consideration of a written letter presenting his case for reinstatement. The fact that these appeals were considered at least in part by June is not dispositive. June avers, and Hill does not contest, that he changed his mind and granted reinstatement to two of the students temporarily suspended in response to the riot. (June Aff. ¶ 17.) Hill has shown no actual bias of June.

The question remains, "what process is due" Hill prior to the April 16 suspension without notice. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In making this determination, the Court must balance Hill's interest in his education and reputation, the risk of an unwarranted suspension, and the university's interest in maintaining safety and discipline. *Jaksa v. Regents of Univ. of Mich.*, 597 F.Supp. 1245, 1248 (E.D.Mich.1984); *see also Mathews*, 424 U.S. at 334–35, 96 S.Ct. at 903. In most situations, this requires that Hill at least receive a written or oral statement of the grounds justifying his suspension and an opportunity to give his side of the story. *Jaksa*, 597 F.Supp. at 1249 (citing *Dixon v. Ala. State Bd. of Ed.*, 294 F.2d 150 (5th

Cir.), *cert. denied* 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961)). For example, in *Goss v. Lopez*, the Court held that at least an informal hearing is required before high school students can be suspended from school for ten days. *Goss*, 419 U.S. at 581–82, 95 S.Ct. at 740. The Court explained,

Neither the property interest in educational benefits temporarily denied nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses.

*Id.* at 576, 95 S.Ct. at 737. The Court acknowledged, however, that sometimes prior notice and a hearing cannot be expected in an educational setting:

Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school. In such cases, the necessary notice and [ ] hearing should follow as soon as practicable. . . .

*Id.* at 582–83, 95 S.Ct. at 740.

A district court applied these standards in a situation similar to Hill's in *Picozzi v. Sandalow*, 623 F.Supp. 1571 (E.D.Mich. 1986). In that case, a law student was injured in a fire in his dormitory room and took a leave of absence from school. Administrators suspected that the student may have set the fire, and they prohibited the student from re-enrolling in school unless he took a lie detector test or prevailed at an administrative hearing. The student sued the school and its administrators under § 1983, alleging that failure to give him notice and a hearing before preventing his re-enrollment violated his right to procedural due process. The district court concluded that under the quoted language in *Goss*, the student's situation did not require a pre-suspension hearing. *Id.* at 1578. The administration's concern for

the safety of the school community fell squarely within the Court's language on exceptions for emergency situations. In addition, the court applied the factors from *Mathews* and concluded that the school's interest in safety and the necessity of immediate action outweighed the plaintiff's private interests in continuing his education. *Id.* at 1579. Thus, the failure to provide notice and a hearing before the decision did not amount to a due process violation.

Although it is a close question, this Court will not second guess June's decision to immediately suspend Hill without a prior hearing but with the right to an immediate hearing before an unbiased panel. A riot of several thousand students was a threat to the physical facility, the faculty, and students of MSU. Although the riot was over by the time June suspended Hill on April 16 (as the fire was over before Picozzi sought to re-enroll), June perceived Hill to be a student who, despite being given warnings and being placed on probation, continued his threatening and destructive behavior. Thus, Hill presented himself as a law to himself—a destructive person. Furthermore, the risk of an unwarranted suspension was low given the police evidence of Hill's participation and his disciplinary record at the school. The Court concludes the school's interest in the safety of persons and property and its goal of educating students each hour and each day that school is in session outweigh Hill's interest in being able to live on campus and attend class between April 16 and April 21.

Summary judgment will, therefore, be granted to June on Hill's claims for procedural due process violations.

### B. Whether Hill's right to due process was clearly established

The Court has ruled that Hill's allegations do not amount to a violation of due process. Therefore, the Court need not embark on the second element of the qualified immunity defense inquiry into whether that right was clearly established. *Saucier*, 121 S.Ct. at 2156.

### Conclusion

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment.

An Order consistent with this Opinion will be entered.

### ORDER

In accordance with the Opinion filed this date,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (docket no. 8) is **GRANTED** and Plaintiff's Complaint is **DISMISSED**.

This case is closed.