[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11546
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 27, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:07-cv-00104-WCO

SARA CASTLE,

Plaintiff - Appellant,

versus

APPALACHIAN TECHNICAL COLLEGE, JASPER GEORGIA,
In their individual and official capacities,
et al.,

Defendants,

JOAN THOMPSON, Vice President, in their individual and official capacities,
DR. TRINA BOTELER, Executive Affairs Officer, in their individual and official capacities,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 27, 2011)

Before BARKETT, MARTIN and HILL, Circuit Judges.

BARKETT, Circuit Judge:

We previously issued an opinion in this case. Castle v. Appalachian Technical Coll., No.10-11546, slip op. (11th Cir. Dec. 21, 2010). However, the panel, on its own motion, has decided to vacate that opinion and substitute this one in its place in order to clarify the meaning of one sentence. The only change is to insert the word, "even," at the start of the following sentence, in Part II: "Even in the context of suspensions of no more than ten days, the Supreme Court held that 'as a general rule notice and hearing should precede removal of the student from school.'" The opinion is otherwise identical.

Sara Castle, a former nursing student, brought this 42 U.S.C. § 1983 action alleging that her suspension from the Licensed Practical Nursing Program ("the Nursing Program") at Appalachian Technical College ("ATC"), violated her free speech and due process rights. Castle alleged that two ATC administrators, Joan Thompson, Vice President of Academic Affairs, and Dr. Trina Boteler, interim Vice President of Student Services, (1) suspended her in retaliation for reporting one of her instructors for falsifying attendance records, in violation of the First Amendment; and (2) suspended her without a meaningful opportunity to respond

to the charges against her, in violation of the Due Process Clause of the Fourteenth Amendment.

The district court awarded summary judgment in favor of Thompson and Dr. Boteler on Castle's First Amendment retaliation claim based on qualified immunity but permitted the procedural due process claim to be tried before a jury, which returned a verdict in Castle's favor in the amount of $50,000 in compensatory damages and $400,000 in punitive damages. However, the district court subsequently granted the administrators' motion for a judgment as a matter of law, see Fed. R. Civ. P. 50(b), holding that while there was sufficient evidence for the jury to conclude that Castle's due process rights were violated, the administrators were shielded by qualified immunity. Castle now appeals both rulings. After careful review, we affirm, concluding that the appellees were entitled to qualified immunity.

Qualified immunity shields government officials sued in their individual capacity from liability for civil damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). As administrators at a state technical college, Thompson and Dr. Boteler were government officials, and the parties agree that they were acting within the scope of their discretionary

authority. Thus, to determine whether they are protected by qualified immunity, we consider (1) whether the evidence, taken in the light most favorable to Castle, shows that the administrators violated a federal right and, if so, (2) whether that right was clearly established at the time of the violation. Saucier v. Katz, 533 U.S. 194, 201 (2001).[1] Therefore, we first decide whether a violation of federal law occurred as to each claim and, if so, then determine whether the administrators would reasonably have known that their actions violated the plaintiff's federal rights.[2]

## I. First Amendment Retaliation Claim

To establish a First Amendment retaliation claim, a plaintiff must show that (1) her speech was constitutionally protected; (2) she suffered adverse conduct that

---

[1] In Pearson v. Callahan, the Supreme Court revisited Saucier and held that while that opinion's two-step inquiry "is often appropriate, it should no longer be regarded as mandatory." – U.S. –, 129 S. Ct. 808, 818 (2009). In this case, we find it appropriate to follow Saucier.

[2] We review the summary judgment on the First Amendment retaliation claim de novo, viewing the evidence in the light most favorable to the non-moving party. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003). Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

We also review the judgment as a matter of law on the procedural due process claim de novo, viewing the evidence in the light most favorable to the non-moving party. Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997). To determine whether a defendant is entitled to qualified immunity following a jury verdict, we view the evidence in the light most favorable to the prevailing party, giving "deference to the jury's discernible resolution of disputed factual issues." Oladeinde v. City of Birmingham, 230 F.3d 1275, 1290 (11th Cir. 2000) (quotation marks omitted).

would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the adverse conduct and the protected speech. Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech. Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008). However, once the plaintiff shows that her protected conduct was a motivating factor, the burden shifts to the defendant to show that she would have taken the same action in the absence of the protected conduct, in which case the defendant cannot be held liable. Id. (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)).

The evidence before the district court at the summary judgment stage, viewed in the light most favorable to Castle, reflects the following events. In March 2007, one of Castle's instructors complained to school administrators that she often disrupted class, and Castle was given a disciplinary warning stating that she must improve her behavior or face the possibility of expulsion. Later, in approximately May 2007, Castle supported a petition seeking to change the Nursing Program's passing grade requirements. Castle does not dispute that she told one student that he would be "verbally attacked" by his peers if he did not

5

sign the petition, but the parties dispute to what other extent Castle pressured students. No students complained about being pressured to sign the petition at this time.

On two occasions after Castle received the disciplinary warning, the administration received reports of her misconduct from her instructors. First, in June 2007, one of Castle's instructors informed an administrator that a student had told her that Castle had threatened him.[3] This allegation was not investigated at the time. Second, on August 21, 2007, a different instructor reported that Castle was inappropriately loud and argumentative during a class discussion and that another student, Suanne Clayton, had reported that Castle had threatened her the previous semester, warning her to "be careful in the parking lot." Castle denies making this threat.

On August 22, 2007, there was a heated argument between Castle, Clayton, and other students about a clinical course taught by Betty Sue Loflin. Castle and another student, Elizabeth Mata, left class to report what they believed were infractions by both Clayton and Loflin. Castle and Mata informed the Vice President of Academic Affairs, Thompson, that Loflin consistently released

---

[3] The record is not clear as to whether this was the same student who testified that Castle had threatened him if he did not sign the petition.

students early from this full day clinical course—sometimes after as little as one hour—and falsified their attendance records. They also complained that student Clayton had an excessive number of absences and received preferential treatment. Thompson initiated an investigation that confirmed the allegations against Loflin, and the instructor was fired two days later, on August 24, 2007.

As part of the investigation into Loflin's misconduct, Thompson also interviewed Clayton. Clayton admitted that she had been permitted to leave class early and had missed classes, but also told Thompson that she felt threatened by Castle and Mata and filed a formal grievance against them. In the grievance, Clayton alleged that Castle and Mata had both bullied and yelled at her, and that Castle had spread lies about her, called her names, and disrupted class by arguing with instructors. Thompson instructed Dr. Boteler to investigate Clayton's grievance against Castle and Mata.

Dr. Boteler immediately interviewed all of the students in the clinical course except for Castle, Mata, and Clayton. According to her notes, every student who was present corroborated Clayton's account of the August 22 argument and reported witnessing "inappropriate, aggressive, and/or threatening behavior" by Castle, and one student stated that Castle had once threatened him or her.[4] None

---

[4] Dr. Boteler did not identify the students by name or gender in her interview notes.

of the students reported any inappropriate conduct by Mata. However, one of the students interviewed testified that she reviewed Dr. Boteler's notes of each interview and concluded that none accurately reflected what she had said.

That same day, August 24, 2007, Dr. Boteler and Thompson met with Castle and told her that they had decided to dismiss her from the Nursing Program because she had violated the Student Code of Conduct and the terms of her disciplinary warning. The defendants also advised Castle of her right to appeal the decision. On August 27, 2007, Castle filed a written administrative appeal, which was referred to an independent committee for review. The committee elected to forgo a formal hearing and to decide the case based on the written appeal. On September 6, 2007, the committee upheld the dismissal as a suspension for the remainder of the year. Castle then filed this lawsuit alleging that Thompson and Dr. Boteler suspended her in retaliation for reporting the misconduct by Loflin.

The parties do not dispute that reporting Loflin was protected speech and that the suspension from the Nursing Program constituted adverse conduct. Thus, the questions remaining are whether Castle presented sufficient evidence that her protected speech was a motivating factor in the suspension and, if so, whether the administrators established that they would have suspended her in the absence of the protected speech. The district court found that there were disputed issues of

8

material fact as to the administrators' subjective motivations and, for the purposes of this appeal, we accept that there is a factual dispute as to whether Castle's protected speech was a motivating factor in the suspension.

Assuming for the sake of argument that there was a retaliatory motive, this record, however, establishes that Thompson and Dr. Boteler did in fact also possess a lawful motive for suspending Castle, and that they reasonably believed that they would have suspended Castle in the absence of her protected speech because of her other conduct. This is further supported by the fact that the administrators took no disciplinary action against Mata, who engaged in the same protected speech as Castle. Even though this issue could raise a jury question on the merits of Castle's claim, we cannot say the district court erred in deciding that, for qualified immunity purposes, school administrators in their position could have reasonably believed that suspending Castle would not violate her First Amendment rights under the facts of this case. See Foy v. Holston, 94 F.3d 1528, 1534-35 (11th Cir. 1996). Therefore, we affirm the summary judgment in the appellees' favor based on qualified immunity.

## II. Procedural Due Process Claim

The Fourteenth Amendment prohibits the states from depriving a person of life, liberty or property without due process of law. U.S. Const. amend. XIV.

9

Thompson and Dr. Boteler do not dispute that Castle had a property interest in her continued enrollment in the Nursing Program, and that she could not be deprived of that interest without due process.  See Dixon v. Ala. State Bd. of Educ., 294 F.2d 150, 156-57 (5th Cir. 1961) (holding that students had a property interest in their continued enrollment at a "public institution of higher learning").[5]  While the due process rights of students charged with misconduct "are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial," Nash v. Auburn Univ., 812 F.2d 655, 664 (11th Cir. 1987), the Fourteenth Amendment requires that they be provided with "the opportunity to be heard at a meaningful time and in a meaningful manner."  Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quotation marks omitted).

Thus, we have held that "due process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct." Dixon, 294 F.2d at 158 (emphasis added).  Even in the context of suspensions of no more than ten days, the Supreme Court held that "as a general rule notice and hearing should precede removal of the student from school."  Goss v. Lopez, 419 U.S. 565, 582 (1975) (emphasis added).  However, the Court also recognized an

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

exception to the pre-suspension hearing requirement where a student's "presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process," in which case the student may be immediately removed from school and a "hearing should follow as soon as practicable . . . ." Id. at 582-83.

In this case, Thompson and Dr. Boteler did not provide Castle with any opportunity to be heard before the decision was made to suspend her. The administrators argue that Castle was not entitled to a pre-deprivation hearing because she had previously received a disciplinary warning. We find this argument meritless. It cannot be that once disciplined, a student loses any right to respond to new accusations against her. A previous disciplinary warning cannot preclude a student from presenting evidence that she was not guilty of subsequent misconduct or mitigating evidence showing that a less stringent punishment would be appropriate. Just as a person charged with a crime retains the same due process rights even if she was previously convicted of a similar offense, a student accused of misconduct retains her due process rights even if she had been previously disciplined.

The administrators also argue that Castle was not entitled to a pre-deprivation hearing because she posed a continuing danger to other students and

11

an ongoing threat of disruption to the educational process. They direct our attention to Hill v. Bd. of Trs. of Mich. State Univ., 182 F. Supp. 2d 621 (W.D. Mich. 2001) and Picozzi v. Sandalow, 623 F. Supp. 1571 (E.D. Mich. 1986). In Hill, the court held that administrators were not required to provide a pre-suspension hearing to a student after he was arrested for inciting a riot of several thousand students next to the university campus. 182 F. Supp. 2d at 630. In Picozzi, the court held that no pre-suspension hearing was required for a student suspected of setting fire to his dormitory room. 623 F. Supp. at 1578. We find these cases inapposite. Castle was never accused of involvement in any physical altercation or of creating a public safety hazard, and many of the complaints against her—including the most serious accusation, that she had threatened other students[6]—were based on incidents that allegedly occurred months before the suspension. The allegations against Castle do not rise to the level of seriousness necessary to show that she posed a threat sufficient to deny her a pre-suspension hearing. For the foregoing reasons, we reiterate that depriving a public school student of a pre-suspension hearing constitutes a violation of due process.

However, notwithstanding the constitutional violation, we cannot say that

---

[6] Castle asserts that the only threat that she made was that another student would be verbally attacked by his peers for not signing the petition.

12

the district court erred in deciding that, for qualified immunity purposes, it was not clearly established at the time Castle was suspended that the immediate availability of an appeals process would not have adequately protected Castle's due process rights under the facts of this case. We have already noted the complicated factual issues surrounding the investigation of Castle's conduct. Moreover, the administrators made known to Castle that she could immediately appeal their determination, which Castle did within a few days. Based on the facts of this case, we affirm the judgment as a matter of law in the appellees' favor based on qualified immunity.

**AFFIRMED.**