[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10434
_____

D.C. Docket No. 3:11-cv-01106-CLS

JERRY MORRIS,

Plaintiff - Appellee,

versus

TOWN OF LEXINGTON ALABAMA, et al.,

Defendants,

MARK BOWERS,
LEE BRADFORD

Defendants – Appellants.

_____

Appeals from the United States District Court
for the Northern District of Alabama
_____

(May 21, 2014)

Before TJOFLAT and WILSON, Circuit Judges, and BUCKLEW,* District Judge.

_____

    * Honorable Susan C. Bucklew, United States District Judge for the Middle District of
Florida, sitting by designation.

TJOFLAT, Circuit Judge:

In this case, police officers entered a residence without a warrant. The owner of the residence told them to leave, but they refused. When the officers detained the owner, he punched one of them. He was arrested for assaulting a police officer and taken into custody.

The owner, claiming that the officers' conduct in entering his house without a warrant and then arresting him for punching the officer infringed his rights under the Fourth Amendment,[1] sued the officers in the United States District Court for the Northern District of Alabama, seeking damages under 42 U.S.C. § 1983.[2] The

---

[1] The Fourth Amendment to the U.S. Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Amendment applies to state and local governments, and thus to the police officers in this case, through the Due Process Clause of the Fourteenth Amendment. See Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691, 6 L. Ed. 2d 1081 (1961).

[2] Section 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. The owner sued the officers in their individual, as opposed to their official, capacities.

2

officers responded by moving the District Court to dismiss the owner's claims based on the affirmative defense of qualified immunity. The court denied their motions, and they appeal.[3] We conclude that the District Court properly denied the officers qualified immunity for entering the owner's residence without a warrant. The court erred, though, in denying the officers' motions to dismiss the owner's claim for unlawful arrest.

## I.

The home owner is Jerry Morris. The police officers are Mark Bowers and Lee Bradford. The claims at issue here arose out of events that took place in the early morning of April 19, 2009, at and around Morris's residence.

According to Morris's complaint,[4] a 911 operator in Alabama received an emergency phone call from a highly intoxicated woman, who said that she had

---

[3] We have jurisdiction to entertain this interlocutory appeal pursuant to 28 U.S.C. § 1291. See Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S. Ct. 2806, 2817, 86 L. Ed. 2d 411 (1985) ("[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."). In this case, the District Court, in ruling on the officers' motions to dismiss, considered the allegations of the owner's complaint in the light most favorable to the owner. Having done that, the court eliminated any material issues of fact and its ruling turned on a question of law. We likewise view the complaint in the light most favorable to the owner.

[4] We refer to Morris's second amended complaint.

3

been "abandoned"[5] and did not know where she was. She requested that someone be sent to pick her up.[6]

Town of Lexington Police Officer Lee Bradford and Reserve Police Officers Matt Wigginton and Jan Montgomery and Town of Anderson Police Chief Mark Bowers responded to the 911 call[7] and on arriving at Morris's address found the woman who made the 911 call standing outside his house. She claimed "vaguely and generally" that she was in danger and that someone had been beating Morris's horses.[8] The woman made no accusations against Morris.

After placing the woman in a chair on the porch in front of Morris's house, the officers knocked on the front door. Morris was in the house, asleep. His girlfriend woke him, and he went to the front door. While Morris stood inside the threshold, the officers asked him about the woman sitting in the chair. He said that he was unacquainted with her but knew her sister.

---

[5] Doc. 44, at 2–3. The complaint does not allege how the woman came to be abandoned on the property.

[6] The complaint alleges that the woman had been "abandoned on [Morris's] property" but does not state the location of Morris's residence. Doc. 44, at 3. We infer from the complaint's allegations that the "property" contained Morris's residence and was located in Lauderdale County, Alabama, because, as indicated in the text following this note, the police came to the "property" from two townships in Lauderdale County. Nor does the complaint state where on the "property" the woman was when she made the 911 call. We infer that it was made from outside Morris's house because when the police arrived she was not in the house. Morris was inside the house sleeping, and his girlfriend was with him.

[7] The Town of Lexington and the Town of Anderson are located in Lauderdale County, Alabama.

[8] Doc. 44, at 3.

4

When the officers told Morris that the woman said his horses were being abused, he expressed concern and informed the officers that he would put on his boots and check on them. Bradford immediately informed him he was "not going anywhere."[9] When Morris stepped away toward the interior of the house, Bradford, Wigginton, and Bowers entered the house and followed him. Morris told them to leave—that if they wanted to search the house, they would have to obtain a warrant. Bowers and Wigginton left and stood on the front porch. Bradford stood in the front doorway, holding the door open.

At this point, Lauderdale County Deputy Sheriffs James Distefano and Patrick Davis arrived on the scene and were briefed on what had taken place—that Bradford, Wigginton, and Bowers had entered Morris's house without a warrant, and that Wigginton and Bowers had stepped back outside when Morris told them to leave. Bradford had refused to leave; he remained in the doorway. When Morris tried to close the door, Bradford shoved him. Morris, retaliating, punched him. With that, Bradford, Bowers, Wigginton, Distefano, and Davis entered the house, brought Morris to the floor and subdued him. While Morris was on the floor, Bowers used a taser on him in "drive stun mode, leaving numerous burn

---

[9] Doc. 44, at 3.

marks on [his] back."[10]  Bowers used the taser after Morris was handcuffed and no longer resisting.  With Morris in custody, Bowers, Bradford, Wigginton, and Montgomery searched his home and cars.

Morris was charged with assaulting a police officer and resisting arrest.  In September 2009, the Lauderdale County District Attorney presented the charges to a grand jury.  The grand jury issued a no bill.  The next month, Morris filed notices of claims with the Towns of Lexington and Anderson.  After Morris filed the notices, Bowers, Bradford, Wigginton, and Montgomery met and agreed to a false version of the events that had taken place at Morris's house.  Their story was that they entered the house with Morris's consent; that Morris was intoxicated, aggressive, and threatening; that Morris slammed the door on Bradford without giving him a chance to leave; that Bradford did not shove Morris; and that Morris punched Bradford without provocation.  Having conjured this story, the four officers convinced the District Attorney to resubmit the case to another grand jury.

On November 6, 2009, a second grand jury returned an indictment against Morris, charging him with two counts of assault in the second degree and a single count of resisting arrest.  The case was tried to a jury the next month.  The jury

---

[10] Doc. 44, at 5.

deadlocked on all counts, and the court declared a mistrial.  A second trial, in

January 2011, resulted in verdicts of acquittal.

II.

Morris brought this law suit in the Northern District of Alabama on March

28, 2011.  Named as defendants in addition to Bowers and Bradford were

Officers Wigginton and Montgomery, Deputies Distefano and Davis, the Town of

Lexington, and the Town of Anderson.[11]  The complaint is framed in thirteen

counts.  Counts I through VI are brought under 42 U.S.C. § 1983 and allege federal

constitutional violations.[12]  Counts VII through XIII are brought under state law

and allege that the facts underpinning the federal constitutional violations also

---

[11] Like Bowers and Bradford, the other individual defendants were sued in their individual capacities only.

[12] Counts I through IV and Count VI alleged violations of the Fourth Amendment.  Count I, alleging a warrantless entry into Morris's house, was brought against Bradford, Bowers, Wigginton, Distefano, and Davis.  Count II, alleging a false arrest, was brought against Bradford, Bowers, Wigginton, Distefano, and Davis.  Count III, alleging a warrantless search of Morris's house and cars, was brought against Bradford, Bowers, Wigginton, and Montgomery.  Count IV, alleging malicious prosecution in Lauderdale County based on the false story Bradford, Bowers, Wigginton, and Montgomery presented to the District Attorney and then to a Lauderdale County grand jury, was brought against Bradford, Bowers, and Wigginton.  Count V, alleging that the Lauderdale County prosecution was brought in retaliation of Morris's exercise of his First Amendment rights, was brought under the Fourteenth Amendment against Bradford, Bowers, and Wigginton.  Count VI, alleging excessive force in Morris's arrest, was brought against all defendants except Montgomery.  The Town of Anderson was named as a defendant in Counts I through VI based on Bowers's role as the Town's final policymaker for appropriate police conduct.

7

constituted tort-law infringements.[13]  All counts sought compensatory and punitive damages.

The defendants separately moved the District Court to dismiss all or part of the federal and state-law counts for failure to state a claim for relief.  See Fed. R. Civ. P. 12(b)(6).  The motions of the individual defendants also sought the dismissal of the federal counts under the doctrine of qualified immunity.  The District Court issued a plethora of rulings on these motions.  The only rulings before us in this appeal are the court's denial of Bradford's and Bowers's motions to dismiss four of the federal counts, Counts I, II, IV, and V.  Only Count I, based on the officers' warrantless entry into Morris's house, and Count II, based on Morris's arrest, require extended discussion.[14]

---

[13] Count VII, alleging false arrest, Count VIII, alleging assault and battery and excessive force, and Count IX, alleging trespass, were brought against Bradford, Bowers, Wigginton, and the Towns of Anderson and Lexington.  Count X, alleging trespass, Count XI, alleging negligence, and Count XII, alleging wantonness, were brought against Bradford, Bowers, Wigginton, Montgomery, and the Towns of Anderson and Lexington.  Count VIII, alleging malicious prosecution, was brought against Bradford, Bowers, and Wigginton.

[14] The Supreme Court's decision in Rehberg v. Paulk, ___ U.S. ___, 132 S. Ct. 1497, 182 L. Ed. 2d 593 (2012), which was not brought to the District Court's attention before it issued the rulings being appealed, foreclose the claims in Counts IV and V, as Morris readily concedes. Those two counts are based in significant part on the testimony Bradford, Bowers, and Wigginton provided to the Lauderdale County District Attorney and subsequently to the grand jury.  Rehberg holds that "a grand jury witness has absolute immunity from any § 1983 claim based on the witness'[s] testimony."  Id. at ___, 132 S. Ct. at 1506.  The Court also held that this absolute immunity "may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness'[s] testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution."  Id.

III.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)).[15] As the Supreme Court has explained, "the driving force" behind qualified-immunity doctrine is to ensure that "'insubstantial claims' against government officials be resolved prior to discovery and on summary judgment if possible." Anderson v. Creighton, 483 U.S. 635, 640 n.2, 107 S. Ct. 3034, 3039 n.2, 97 L. Ed. 2d 523 (1987).

To that end, to survive a motion to dismiss, Morris must satisfy the two-pronged qualified-immunity standard: (1) the facts alleged in his complaint constitute a violation of his constitutional rights, and (2) the constitutional rights were "clearly established" when the defendant committed the act complained of. Pearson, 555 U.S. at 232, 129 S. Ct. at 815–16. A qualified-immunity inquiry can

---

[15] As a threshold matter, a defendant claiming qualified immunity must demonstrate that he was acting within the scope his discretionary authority at the time of the alleged constitutional violation. Loftus v. Clark-Moore, 690 F.3d 1200, 1204 (11th Cir. 2012). Once the defendant does so, the burden shifts to the plaintiff to demonstrate that the defendant violated a clearly established constitutional right. Id. There is no question Bradford and Bowers were acting in the scope of their discretionary authority when they engaged in the allegedly unlawful conduct.

9

begin with either prong; neither is antecedent to the other.  Id. at 236, 129 S. Ct. at 818.

"The relevant, dispositive inquiry in determining whether a right is <u>clearly</u> established is whether it would be <u>clear</u> to a reasonable [police officer] that his conduct was unlawful in the situation he confronted."  Loftus v. Clark-Moore, 690 F.3d 1200, 1204 (11th Cir. 2012) (internal quotation marks omitted).  While Morris need not demonstrate that there is case-law specifically addressing his factual scenario, "existing precedent must have placed the statutory or constitutional question beyond debate."  Ashcroft v. al-Kidd, ___ U.S ___, ___, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011).

To demonstrate that the contours of a right are clearly established, Morris may proceed in one of three ways:

> First, [Morris] may show that "a materially similar case has already been decided."  Second, [Morris] can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation."  Finally, the conduct involved in the case may "so obviously violate[] th[e] constitution that prior case law is unnecessary."  Under controlling law, [Morris] must carry [his] burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the [Alabama] Supreme Court.

Terrell v. Smith, 668 F.3d 1244, 1255 (11th Cir. 2012) (some alterations in original) (citations omitted).

10

With these principles in mind, we turn to Bowers's and Bradford's appeals. They argue that the District Court erred in failing to dismiss Counts I and II. We address each count in turn.

A.

The Fourth Amendment provides, in relevant part, that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" Payton v. New York, 445 U.S. 573, 585, 100 S. Ct. 1371, 1379, 63 L. Ed. 2d 639 (1980) (quoting United States v. U.S. Dist. Court, 407 U.S. 297, 313, 92 S. Ct. 2125, 2134, 32 L. Ed. 2d 752 (1972)). As such, if there is one principle that is firmly established in Fourth Amendment jurisprudence, it is that "searches and seizures inside a home without a warrant are presumptively unreasonable." Brigham City v. Stuart, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650 (2006) (internal quotation marks omitted). "[W]hen it comes to the Fourth Amendment, the home is first among equals." Florida v. Jardines, ___ U.S. ___, ___, 133 S. Ct. 1409, 1414, 185 L. Ed. 2d 495 (2013).

Bradford and Bowers seek to overcome the presumption that their warrantless entry into the Morris residence was unreasonable with the argument

11

that a warrant was not required at all; they had "reasonable suspicion" to detain Morris and, thus, to enter his house to do so.[16] If not, the entry was not proscribed by clearly established law. We are not persuaded. Assuming for sake of argument that reasonable suspicion akin to that appearing in Terry v. Ohio would provide an exception to the Fourth Amendment's warrant requirement,[17] the officers lacked reasonable suspicion, or even arguable reasonable suspicion. As such, the officers'

---

[16] The reasonable suspicion standard is the product of the Supreme Court's decision in Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In Terry, a police officer became suspicious of a man after observing him on a public street "casing a job" by passing a specific storefront multiple times. Id. at 6, 88 S. Ct. at 1872. The officer approached the man, identified himself as a police officer, and asked for his name. After the man was unresponsive, the officer grabbed him, spun him around, and patted down the outside of his clothing. Id. at 7, 88 S. Ct. at 1872. In the breast pocket of the man's jacket, the officer discovered a pistol. Id. The Supreme Court concluded that the temporary stop and pat down did not run afoul of the Fourth Amendment because the officer had reasonable suspicion to believe the individual was presently armed and dangerous. Id. at 27, 88 S. Ct. at 1883.

[17] We are skeptical that "reasonable suspicion" is the correct standard for justifying the officers' entry. As we have held, "[r]easonable suspicion cannot justify the warrantless search of a house." United States v. Tobin, 923 F.2d 1506, 1511 (11th Cir. 1991).

Bradford and Bowers note that the Supreme Court has held that a person standing in the doorway of a house is "in a public place" and as such is subject to arrest, and "a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." United States v. Santana, 427 U.S. 38, 42–43, 96 S. Ct. 2406, 2409–10, 49 L. Ed. 2d 300 (1976). Then, citing district court cases from this circuit and cases from other circuits, they contend that "the Santana principle is equally applicable to Terry stops at doorways." Bowers Brief, at 28.

Neither officer points us to a case from this court that has extended the Santana principle to Terry stops at doorways. We need not determine whether the principle applies, however, because Santana is clearly inapposite. Morris was not "standing directly in the doorway one step forward would have put [him] outside, one step backward would have put [him] in the vestibule of [his] residence," which is how the Court defined being "in the doorway," see Santana, 427 U.S. at 40 n.1, 96 S. Ct. at 2408 n.1, he was standing at all times inside the threshold of his home. Moreover, and as explained infra, the officers never acquired a reasonable suspicion to conduct a Terry stop.

12

entry into the Morris residence, without a warrant, exigency, or reasonable suspicion, was contrary to clearly established Fourth Amendment law.

According to the complaint, a total of four officers of the Lexington and Anderson police departments arrived at Morris's residence early in the morning of April 19, 2009, in response to a 911 call and found an intoxicated woman, who said she been abandoned and did not know where she was. She claimed "vaguely and generally" that she was in danger and that someone had been beating Morris's horses. The officers placed her in a chair on the front porch of Morris's house and knocked on the front door. They wanted to ask him some questions. At this point, the officers were perfectly within the bounds of the law; "a police officer not armed with a warrant may approach a home and knock." Jardines, ___ U.S. at ___, 133 S. Ct. at 1416. "Officers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just a[s] any private citizen may." United States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006) (alteration removed) (internal quotation marks omitted). So far, so good.

Bradford and Bowers say they had reasonable suspicion to detain Morris, to make a Terry stop. Reasonable suspicion of what? And precisely when did they have it? They do not say. They did not have reasonable suspicion of anything concerning Morris when they approached the front door of his house and knocked, for the woman had said nothing at all indicating that Morris had done anything

13

wrong.  So, the officers' reasonable suspicion had to have arisen after Morris opened the door.

And what did the officers see when Morris opened the door?  A man who had been sleeping, who had just awakened and had not put on his shoes and was unarmed.  When the officers informed him that the woman sitting on the porch had told them that someone was beating his horses, his reaction was to put on his boots and check on his horses.  What the officers faced was an unarmed man who had just gotten out of bed and was concerned about the safety of his horses.  He was not a man armed and presently dangerous, or a man who "ha[d] engaged in, or is about to engage in, criminal activity," United States v. White, 593 F.3d 1199, 1202 (11th Cir. 2010) (internal quotation marks omitted), and thus was not subject to a Terry stop.

In short, the officers entered Morris's house without a warrant or anything remotely approaching reasonable suspicion.  Therefore, they violated the Fourth Amendment.  The District Court properly declined to dismiss Count I under the doctrine of qualified immunity.

### B.

"An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to

14

the arrest." Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010).  The

probable cause standard "is met when the facts and circumstances within the

officer's knowledge . . . would cause a prudent person to believe, under the

circumstances shown, that the suspect has committed, is committing, or is about to

commit an offense." Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003)

(internal quotation mark omitted).  For an officer to be entitled to qualified

immunity, however, he need not have actual probable cause; "arguable" probable

cause will suffice. Brown, 608 F.3d at 734 .  Thus, so long as "reasonable officers

in the same circumstances and possessing the same knowledge as the Defendants

could have believed that probable cause existed to arrest Plaintiff," that is enough.

Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004) (internal

quotation marks omitted).  "Whether an arresting officer possesses probable cause

or arguable probable cause naturally depends on the elements of the alleged crime

and the operative fact pattern." Skop v. City of Atlanta, 485 F.3d 1130, 1137–38

(11th Cir. 2007) (citation omitted).

Under Alabama law, it is a crime to resist a lawful arrest, see Ala. Code

§ 13A-10-41, and to commit assault, see id. §§ 13A-6-20 to -22.  Nevertheless,

Alabama law gives a citizen the right to use force to resist an unlawful arrest.  See

15

Commentary to Ala. Code § 13A-10-41 (quoting cases).[18]  In addition, a person "in lawful possession or control of premises . . . may use physical force upon another person when and to the extent that he reasonably believes it necessary to prevent or terminate what he reasonably believes to be the commission or attempted commission of a criminal trespass by the other person in or upon such premises." Ala. Code § 13A-3-25(a).  Also, Alabama law permits a person to use reasonable force to defend himself from what he "reasonably believes to be the use or imminent use of unlawful physical force." Id. § 13A-3-23(a).

The officers' entry and presence in Morris's house was unlawful, and Morris was within his right to demand that they leave.  Cf. Kentucky v. King, ___ U.S. ___, ___, 131 S. Ct. 1849, 1862, 179 L. Ed. 2d 865 (2011) ("[E]ven if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises . . . .").  When Bradford stood in the doorway and refused to leave when asked to leave, he effectively detained Morris.  And Bowers,

---

[18] Alabama's rule permitting an individual to resist an unlawful arrest is contrary to this court's treatment of resisting an unlawful arrest under federal law.  For instance, in United States v. Danehy, 680 F.2d 1311 (11th Cir. 1982) (per curiam), where the defendant was charged under 18 U.S.C. §§ 111, 1114 with resisting arrest, we held that the District Court did not err when it refused to instruct the jury on justifiable resistance to an unlawful arrest.  Id. at 1315–16.  We reasoned that "the common law right to resist an arrest that is not based upon probable cause, suited though it may have been to a past era, has no significant role to play in our own society where ready access to the courts is available to redress such police misconduct." Id. at 1316. Because Bradford, Bowers, and the others were enforcing state law, and not federal law, Danehy is inapposite and Alabama law controls.

16

who was standing close to Bradford, assisted the detention. Under Fourth Amendment, the detention amounted to an unlawful seizure.

Morris's reacted to this detention by trying to shut the door. Bradford reacted to Morris's move by pushing him and thus committing an assault. Morris retaliated by punching Bradford, by assaulting him. Although Alabama law permits a citizen to use reasonable force in defense of self or property, Ala. Code §§ 13A-3-23, -25, this is an affirmative defense, id. § 13A-3-21. Morris could plead the use of such force as a defense to a charge of assault; in fact, he prevailed when he was tried on that charge. But the fact remains that once Morris punched Bradford, the officers had probable cause, or at the very least arguable probable cause, to believe that Morris had commited an assault.

Therefore, the officers' arrest of Morris after he punched Bradford cannot be considered a violation of Morris's Fourth Amendment right not to be seized without probable cause. Morris has accordingly failed, in Count II, to state a claim that his arrest constituted a Fourth Amendment violation, and the District Court erred in denying Bower's and Bradford's motions to dismiss that count.

## IV.

For the foregoing reasons, the District Court's decision ruling with respect to Count I is AFFIRMED; it ruling as to Count II is REVERSED.

SO ORDERED.

17