PROCTOR, District Judge,
concurring:
Although I fully concur in Judge Rosen-baum’s opinion, I write to underscore why this case involves a constitutional violation of Moore’s rights, but Deputy Pederson is nevertheless entitled to qualified immunity. I also write separately to emphasize the landscape of the law on qualified immunity that must be followed when considering officer liability on these types of claims.[1]
Qualified immunity “represents the norm” for government officials exercising discretionary authority. Harlow v. Fitzgerald, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Indeed, as the qualified immunity defense has evolved, it provides ample protection to “all but the plainly incompetent or those who knowingly violate the law.” Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). And “[o]nce the defendant public official satisfies his burden of moving forward with the evidence [consistent with qualified immunity], the burden shifts to the plaintiff to show lack of good faith on the defendant’s part. This burden is met by proof demonstrating that the defendant public official’s actions ‘violated clearly established constitutional law.’ ” Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir.1988) (quoting Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir.1983)). It is essential to keep this topography in mind when considering the facts of this case.
Let me be very clear. I agree that Pederson could not have lawfully executed a Terry stop in this case, at least while Moore was inside his home. Likewise, I agree that Moore, standing inside his home, was free to decide not to answer the Deputy’s questions.[2] Finally, I also agree that it was unlawful for Pederson to have arrested Moore. But that is not all this case involves.
When Pederson knocked on Moore’s door, he was responding to a complaint of a verbal dispute in the parking lot of an apartment complex. When he approached Moore’s door, there is nothing in the record to suggest that Pederson had anything in mind other than to perform a “knock and talk,” and tell those creating the disturbance to keep it down. But when the door finally opened (after a protracted wait), the scene presented to Deputy Ped-erson raised his level of concern. He saw (literally) a half-naked man, a completely naked woman, and a completely clothed woman who was (in Pederson’s words) *1056 “pissed off’ with a scowl on her face. He suspected a domestic situation and began to ask questions. As the half-naked man refused to answer questions and refused to give his name, the “knock and talk,” in the Deputy’s mind, morphed into a Terry stop. Deputy Pederson then arrested Moore' through the threshold of the doorway for Moore’s failure to cooperate. Importantly, there is a Florida criminal statute which states that “[w]hoever shall resist, obstruct, or oppose any officer ... without offering or doing violence to the person of the officer, shall be guilty of a misdemean- or in the first degree.... ” Florida Statute § 843.02.
On this unique set of facts, the primary question for us to consider is whether a reasonable officer would understand that reaching across the threshold to arrest Moore in the course of what Pederson erroneously believed to be a Terry stop violated a clearly established constitutional right. Fils v. City of Aventura, 647 F.3d 1272, 1291 (11th Cir.2011); see also Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (holding that to deny immunity, a plaintiff must affirmatively demonstrate that “no reasonably competent officer would have” acted as the public official did). No decision of the United States Supreme Court, this court, or the Supreme Court of Florida had clearly established the law on this issue in 2008. In fact, in 2014 a panel of this Circuit stated it was “skeptical” that the reasonable suspicion standard advanced in Terry could properly be the standard for justifying a warrantless arrest through the doorway of a home. Morris v. Town of Lexington, 748 F.3d 1316, 1323, n. 16, 17 (11th Cir.2014).[3] If, in 2014, a panel of this Circuit was only skeptical about the argument Pederson advances here, it follows tautologically that the law could not have been clearly established in 2008 when Pederson stood outside Moore’s doorway.
Although the dissent has cited case law for the proposition that Pederson acted unreasonably in reaching across the threshold of the home to arrest Moore, it is well settled that “[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.” Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir.1993), modified, 14 F.3d 583 (11th Cir.1994). When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are critical.[4] .They need not be the same, but they must be materially similar. See, e.g., Edwards v. Gilbert, 867 F.2d 1271, 1277 (11th Cir.1989); see also Barts v. Joyner, 865 F.2d 1187, 1190 (11th Cir.1989) (“The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right.”) (internal citations omitted). That is why we have said that “[w]hen considering whether the law applicable to certain facts is clearly established, the facts of eases relied upon as precedent are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar.” Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1150 (11th Cir.1994) (citations omit *1057 ted). Qualified immunity focuses on the actual, specific details of concrete cases. Lassiter, 28 F.3d at 1149-50. Plaintiffs may not discharge their burden by referring to general rules'and abstract rights. Id. at 1150. See also Ashcroft v. al-Kidd, 563 U.S. 731, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) (“We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate”). As we have discussed earlier this year:
Furthermore, recognizing that the clearly established law question turns on the law at the time of the incident, the district court must consider the law “in light of the specific context of the case, not as a broad general proposition.... ” Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). In other words, the facts of the case before the court must be materially similar to the facts , in the precedent that clearly establishes the deprivation. Marsh v. Butler, 268 F.3d 1014, 1032 (11th Cir.2001) (en banc), abrogated on other grounds, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To be clearly established, the precedent must give officials clear warning of unconstitutional conduct. Id.
In considering the law to do this analysis, the district court should compare the facts of the case before the court that allege a constitutional deprivation with those cases that the party opposing the motion contends show the clearly established nature of the law. As this Court has explained:
For qualified immunity purposes, a pre-existing precedent is materially similar to the circumstances facing the official when the specific circumstances facing the official are enough like the facts in the precedent that no reasonable, similarly situated official could believe that the factual differences between the precedent and the circumstances facing-the official might make a difference to the conclusion about whether the official’s conduct was lawful or unlawful, in the light of the precedent.
Thus, every fact need not be identical. Minor variations in some facts (the precedent lacks arguably significant fact or contains an additional arguably significant fact not in the circumstances now facing the official) might be very important and, therefore, be able to make the circumstances facing an official materially different than the pre-existing precedents, leaving the law applicable — in the circumstances facing the official — not clearly established when the defendant acted.” Id.
Merricks v. Adkisson, 785 F.3d 553, 559 (11th Cir.2015). It is unreasonable to expect a police officer to synthesize cases and extract from them purely legal principles untethered to the facts with which he is confronted.[5]. But that is exactly the standard to which the dissent holds Peder-son.
In my view, the two cases relied upon by the dissent on the issue of the warrantless arrest are not sufficiently similar to this case to put Pederson on notice that he was violating clearly established law. Thus, while those cases have drawn fines, those fines can only be viewed in the context of *1058 the facts of each case. Neither case is factually similar to this case and, even armed with the knowledge of both decisions, a reasonable officer would not have been on notice that what Pederson did violated a clearly established right.
The year before Deputy Pederson knocked on the apartment door, we decided McClish v. Nugent, 483 F.3d 1231 (11th Cir.2007). The deputy in McClish had previously visited with the plaintiff after receiving a complaint that the latter had made threats against a neighbor. The deputy left the residence, returned to the station, but again travelled back to the residence for the express purpose of making an arrest. Although, after returning to his station, he had hours to do so, he never obtained an arrest warrant. Rather, he returned to the residence that night with the intent to arrest, not merely with the intent to investigate a disturbance. As such there was no question that the deputy in McClish was operating under a war-rantless arrest standard and not the Terry stop standard that is at issue in this case. The facts of McClish are so dissimilar to this case that they could not put a reasonable officer in Pederson’s position on notice that his conduct in 2008 violated clearly established law.
Nor did our decision in Bashir operate to put an officer such as Pederson on notice that reaching across the threshold of a home to effectuate an arrest during what he (erroneously) believed to be a Terry stop would subject him to personal liability for a warrantless arrest. Bashir v. Rockdale County, Georgia, 445 F.3d 1323 (11th Cir.2006). The Bashir ease does not address Terry stops, focusing instead on the questions of exigent circumstances and consent. Bashir, 445 F.3d at 1328 (assuming the probable cause standard and stating “[t]he deputies must show their presence in the home was justified, either by exigent circumstances or consent.”).
Although I agree that Pederson violated Moore’s constitutional rights when he reached through the doorway of Moore’s home to effectuate the arrest, he is nevertheless entitled to qualified immunity. Notice is the touchstone of qualified immunity. Holmes v. Kucynda, 321 F.3d 1069, 1078 (11th Cir.2003). The notice standard asks whether the right was clearly established at the time of the incident. It does not ask whether judges or legal scholars might be able to parse obscure legal principles from case law to come to the conclusion that officers were on notice of the unconstitutional nature of their actions. “We cannot realistically expect that reasonable police officers know more than reasonable judges about the law.” Barts v. Joyner, 865 F.2d 1187, 1193 (11th Cir. 1989). Indeed, in fairness, we should expect law enforcement officers to know less about the law than judges. Deputy Peder-son was not plainly incompetent and did not knowingly violate the law. He is entitled to qualified immunity in this case. The district court’s judgment is due to be affirmed.

. Although I join in Judge Rosenbaum's opinion, I am not sure it is necessary to decide this case on the question of "arguable consent.” In my judgment, Pederson should prevail on his qualified immunity defense even before we reach that question. Nevertheless, Judge Rosenbaum has correctly analyzed the issue; her discussion of it provides additional reasons the district court’s ruling is due to be affirmed.

. The Supreme Court’s decision in Kentucky v. King, 563 U.S. 452, 131 S.Ct. 1849, 1862, 179 L.Ed.2d 865 (2011) makes this clear. But the Court did not decide that case until 2011, three years after the events in this case.

. Nor does the Morris decision undermine Pederson's qualified immunity defense. It was decided in 2014, after the events of this case, and is also factually dissimilar to what occurred here.

. The conduct at issue here does not lie "so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [Peder-son], notwithstanding the lack of fact-specific case law” on point. See Fils, 647 F.3d at 1291. Cf. Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

. It should not be lost on us that the three judges on this panel have differing views of how the qualified immunity calculus should play out under these facts. If three judges, reviewing a grant of qualified immunity in the district court, have approached this question so differently, what chance did Pederson have (as he stood outside Moore's door that night) to determine that clearly established law precluded Moore’s arrest?