[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14028
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-20070-DLG-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER JERMAIN SPANN,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 2, 2016)

Before TJOFLAT, HULL and JILL PRYOR, Circuit Judges.

PER CURIAM:

After entering a conditional guilty plea, Christopher Spann appeals his conviction for illegal possession of a firearm by a felon.[1]  On appeal, Spann argues that the police officer who found the firearm in the trunk of a car in which Spann was riding did not have probable cause to search the trunk.  After review, we affirm.[2]

A police officer may conduct a warrantless search of an automobile "if (1) the vehicle is readily mobile; and (2) the police have probable cause for the search."  United States v. Lindsey, 482 F.3d 1285, 1293 (11th Cir. 2007).  "Probable cause, in turn, exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle."  Id. (quotation marks omitted).  Probable cause does not require police to prove to a certainty that contraband or evidence will be found in the location to be searched.  See United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir. 1995) (explaining that "probable cause itself is a doctrine of reasonable probability and not certainty"); see also United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999).  Moreover, to have probable cause to believe something is contraband or evidence of a crime, an officer need not "know with absolute certainty that all

---

[1]On appeal, Spann does not challenge his 37-month sentence.

[2]For motions to suppress, this Court reviews the district court's factual findings for clear error, and its application of the law to the facts de novo.  United States v. Lewis, 674 F.3d 1298, 1302-03 (11th Cir. 2012).  The facts are construed in the light most favorable to the prevailing party in the district court.  Id. at 1303.

elements of a putative crime have been completed[.]" United States v. Smith, 459 F.3d 1276, 1292 (11th Cir. 2006).

According to evidence presented at the suppression hearing, Detective Alain Cruz was conducting undercover narcotics surveillance at an apartment complex in a Miami neighborhood known for a high rate of drug crimes and gun violence. At about 9:00 p.m., Detective Cruz observed Spann cross the courtyard of the complex with a rifle in his hand and not encased. Spann looked up and down the street, and then jogged to a waiting Dodge Charger and put the rifle in the trunk. Spann's trip to the car took about ten to fifteen seconds. Spann was wearing ordinary, civilian clothing and was not wearing hunting or fishing gear. Detective Cruz called for backup, advising through radio communications that he had observed a male with a firearm walk to a car and place the firearm in the trunk. Two or three minutes after Spann got into the passenger seat, the woman in the driver's seat drove the car away.

Detective Cruz followed the car for two or three minutes. Once a backup unit arrived, Detective Cruz identified the car and then returned to his narcotics surveillance. Another officer, Detective Brandon Ashe, conducted a traffic stop for the violation of Florida's "open carry" law. Detective Ashe drew his weapon and asked the occupants to get out of the car and sit on the curb, where Spann was placed in handcuffs. Spann was not openly displaying law enforcement or security

3

guard credentials, did not identify himself as a police officer, and did not tell Detective Ashe he was going fishing or hunting. Detective Ashe did not see anything inside the car that made him believe Spann's open carrying of the rifle was lawful.

Detective Ashe opened the trunk to secure the weapon for everyone's safety and to ensure that no one was inside the trunk. At that point, Detective Ashe observed the rifle inside the trunk and left it there. Detective Ashe asked Spann if he had a permit for the rifle and for Spann's identification. Spann did not have a permit, but gave Detective Ashe his identification. When Detective Ashe learned that Spann was a convicted felon, he retrieved the rifle from the trunk and arrested Spann.

Based on this evidence, we agree with the district court that the officers had probable cause to believe that Spann had violated Florida's open carry law, which makes it a misdemeanor for "any person to openly carry on or about his or her person any firearm[.]" See Fla. Stat. § 790.053(1). Detective Cruz observed Spann openly carry the rifle in his hand. Further, the officers had probable cause to believe the rifle, as evidence of that crime, would be found in the trunk of the car, where Spann had placed it only minutes before. Accordingly, Detective Ashe's search of the car's trunk was supported by probable cause.

4

Spann points out that there are exceptions to Florida's open carry law, such as for on-duty members of the military, law enforcement officers, some security guards, gun dealers, skeet shooters going to and from practice, hunters on a hunting trip, or people going to and from a shooting range. See Fla. Stat. § 790.25(3).[3]  [Blue Brief at 12-13]  Under Florida law, however, these statutory exceptions are considered affirmative defenses, not elements of the offense the state must disprove at trial. See Norman v. State, 159 So. 3d 205, 226 (Fla. Dist. Ct. App. 2015), rev. granted, 182 So. 3d 634 (Fla. Oct. 6, 2015).

Spann contends, without citing any authority, that Detective Ashe was required to question him to eliminate these possible affirmative defenses before opening the trunk.  We disagree.  A police officer is not required to consider and investigate possible affirmative defenses that a defendant may have to the suspected criminal activity.  Further, in the context of a § 1983 claim for a warrantless arrest, this Court concluded that arresting officers were not required to consider affirmative defenses in their probable cause calculation. See Morris v. Town of Lexington, 748 F.3d 1316, 1325 (11th Cir. 2014) (finding officers had probable cause to arrest the plaintiff for assault even though the plaintiff later

---

[3]Spann also notes that a person with a concealed firearm permit may "briefly and openly display a firearm" in a non-threatening manner. See Fla. Stat. § 790.053(1).  However, a "concealed firearm" for which a permit may be obtained is limited to handguns, and Spann was carrying a rifle, not a handgun. See Fla. Stat. § 790.06(1) (defining "concealed weapons or concealed firearms . . . as a handgun, electronic weapon or device, tear gas gun, knife, or billie").

prevailed at his criminal trial by asserting state-law affirmative defenses of self-defense and resisting an unlawful arrest).

In any event, there is no evidence that the detectives ignored facts establishing Spann had an affirmative defense. Indeed, the detectives did not have any information that would have suggested to a reasonable officer (much less conclusively established) that Spann fell within one of the exceptions to Florida's open carry law. During the traffic stop, Spann did not say anything to Detective Ashe to indicate he might be legally justified in openly carrying a rifle. Nor did either detective see anything that would indicate Spann was legally justified in openly carrying the rifle. Spann was not wearing a uniform, displaying credentials, or riding in a vehicle that suggested he was an officer, security guard, or on-duty soldier. Spann was not leaving or approaching a shooting range, hunting area or gun shop or wearing anything to suggest he was going hunting.

Instead, Spann carried the rifle out of an apartment complex in a high crime area known for gun violence. He was wearing civilian clothes and placed the rifle in the trunk of a civilian car. He looked up and down the street before jogging to the waiting car. It was 9:00 p.m. at night. Given the totality of the circumstances, a reasonable officer in the detectives' position would have concluded that there was a "fair probability" that Spann's openly carrying the rifle to the car violated Florida's open carry law and that the rifle still could be found inside the trunk.

6

**AFFIRMED.**