[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14167
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-00237-JRH-BKE

RODERICK D. HAYNES,

Plaintiff - Appellant,

versus

RICHMOND COUNTY SHERIFF OFFICE,

Defendant,

DEPUTY MICHAEL GARNER,
in Individual and Official capacities,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(October 22, 2018)

Before WILLIAM PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Roderick Haynes appeals the grant of summary judgment in favor of Richmond County Deputy Sheriff Michael Garner on the basis of qualified immunity in an action under 42 U.S.C. § 1983 alleging excessive force. The action arose after the patrol car Deputy Garner was driving collided with Haynes who was fleeing on foot. The district court concluded that Deputy Garner's conduct did not violate Haynes's Fourth Amendment rights, but that even if it did, Deputy Garner was entitled to qualified immunity because such violation was not clearly established. We agree that Deputy Garner is entitled to qualified immunity because any violation was not clearly established, and affirm.

## I.    BACKGROUND

### A. Undisputed Facts

On May 12, 2013, Roderick Haynes attended a cookout at an apartment complex in Augusta, Georgia. Deputy Sheriff Michael Garner heard an altercation at the cookout and pulled his patrol car around to the back of the building to investigate. As he was getting out of his vehicle, he heard a number of bystanders yelling that Haynes had a gun. Haynes ran to and entered another car, and Deputy Garner yelled and motioned for Haynes to stop, which he did not. Haynes accelerated the vehicle, drove past Deputy Garner, and came within a few feet of where Deputy Garner was standing. Deputy Garner then got in his patrol car and pursued Haynes. At one point, Haynes abandoned his car. As he ran on foot

2

through a church parking lot, Deputy Garner's patrol car collided with Haynes. Deputy Garner then placed Haynes under arrest, and Haynes was transported to the hospital.

Haynes was charged with aggravated assault, obstruction of an officer, possession of marijuana, fleeing and attempt to elude, and DUI. A firearm was never recovered. The medical report states that Haynes was hit by a vehicle traveling at approximately 20 miles per hour. The medical report also states that Haynes suffered a concussion, laceration of his lip, and abrasion of the upper arm. In 2015, Haynes sought treatment at the Georgia Department of Corrections for severe nerve pain in his neck, shoulder, back, and right leg, which he attributes to the collision.

## B. Haynes's Version

Haynes asserts that at the cookout a group of people, one of whom had a gun, assaulted him. In order to avoid being shot, Haynes fled in his brother's car. Haynes abandoned the car when he "hit[] a curve," but continued running to seek help. Haynes asserts that Deputy Garner intentionally hit him with the patrol car traveling at a speed in excess of 60 miles per hour knocking him six feet into the air and causing extensive damage to the windshield of the patrol car. Haynes alleges that as a result of the collision he suffered injuries to his neck, shoulder, back, and leg.

3

### C. Deputy Garner's Version

According to Deputy Garner, he was speaking with a resident of the apartment complex when he heard a loud disturbance coming from behind a nearby building. He drove to the back of the building where he found a number of people yelling. As he stepped out of the patrol car, he heard people say that Haynes was in possession of a firearm. Haynes entered a car pointed in Deputy Garner's direction as Deputy Garner was shouting and motioning for him to stop. Haynes accelerated the vehicle and came within a few feet of where Deputy Garner was standing as he drove off. Because Haynes fled the scene in such a way and a number of people had indicated that Haynes had a firearm, Deputy Garner returned to his patrol car and pursued Haynes to question him about the altercation at the cookout and to ensure that he did not pose a danger to others.

As Haynes was attempting to exit the apartment complex, he was blocked by a stopped vehicle and got out of the car. Haynes then started to run across the church parking lot toward a wooded area. Deputy Garner drove around the stopped vehicle and attempted to cut Haynes off by pulling in front of him. Haynes continued to run toward Deputy Garner's vehicle and jumped across the hood of the patrol car, which forced Deputy Garner to adjust his course to avoid running over him. At that point, Haynes struck the windshield and the patrol car ended up in a small ditch behind the church.

4

**D. Procedural History**

Haynes filed his complaint pro se on December 23, 2014 claiming that Deputy Garner used excessive force. Deputy Garner filed a motion for summary judgment arguing that he was entitled to qualified immunity. The magistrate judge issued a report and recommendation recommending that the district court grant the motion for summary judgment on the basis of qualified immunity. Haynes timely objected to the report, but the district court adopted the report and recommendation and granted summary judgment to Deputy Garner. The court concluded that Deputy Garner was entitled to qualified immunity because his conduct did not violate Haynes's Fourth Amendment rights, and even if it did, such violation was not clearly established.

## II.    STANDARDS OF REVIEW

We review de novo a district court's grant of summary judgment. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013). We will affirm "if we conclude that there is no genuine issue of material fact—that is, if no 'fair-minded jury could return a verdict for the plaintiff on the evidence presented.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## III.    DISCUSSION

Haynes argues that Deputy Garner violated his Fourth Amendment right to be free from unreasonable seizures by hitting him with a patrol car as he fled on

5

foot. Deputy Garner raises the defense of qualified immunity. Haynes responds that Deputy Garner is not entitled to qualified immunity because there was a constitutional violation and such violation was clearly established by the Supreme Court's decision in *Tennessee v. Garner*, 471 U.S. 1 (1985). For the reasons that follow, we conclude that *Garner* did not provide clear notice of a constitutional violation under the circumstances at issue, and therefore, we affirm the district court's grant of summary judgment to Deputy Garner on the basis of qualified immunity.

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). For qualified immunity to apply, "a public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013) (quoting *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012). That requirement is easily satisfied here as the parties do not dispute that Deputy Garner was acting within the scope of his discretionary authority at all times relevant to this action.

Once a public official proves that he was acting within the scope of his discretionary authority, "the burden shifts to the plaintiff to satisfy the following

two-pronged inquiry: (1) whether the facts that a plaintiff has shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Id.* Our inquiry "can begin with either prong; neither is antecedent to the other." *Morris v. Town of Lexington*, 748 F.3d 1316, 1322 (11th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). We begin with the second prong.

Haynes argues that Deputy Garner is not entitled to qualified immunity because he violated Haynes's clearly established constitutional right to be free from unreasonable searches and seizures. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated." U.S. Const. amend. IV. A Fourth Amendment seizure occurs when "there is a governmental termination of freedom of movement *through means intentionally applied*." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). The Fourth Amendment right against unreasonable seizures also "encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). Deputy Garner contends that he was not trying to hit Haynes with the car but rather was trying to discourage Haynes's flight by placing the patrol car in his path. Haynes alleges that Deputy Garner intentionally hit him at a speed of 60 miles per hour

7

causing him to fly six feet into the air. Based on Haynes's statement, a reasonable jury could find that Deputy Garner intentionally hit Haynes with the patrol car.

Even so, claims that law enforcement officers used excessive force in the course of making an arrest are governed by the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Objective reasonableness must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. And "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. In order to defeat qualified immunity here, Haynes must show that it was clearly established on May 12, 2013, that Deputy Garner's actions were constitutionally unreasonable in light of the circumstances.

A constitutional right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). In other words, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* A constitutional right may be clearly established based on binding precedent from the Supreme Court,

8

this Court, or the highest court of the state where the events took place; or in rare cases "obvious clarity." *Gilmore*, 738 F.3d at 277. The relevant clearly established law cannot be defined "at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). And while a case with identical facts is not necessary, the precedent must make it "obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010).

Haynes argues that *Tennessee v. Garner*, 471 U.S. 1 (1985) provides clearly established law here because he was unarmed and did not pose a threat of serious harm. *Garner* concerned the actions of a police officer who shot and killed a fleeing burglary suspect. 471 U.S. at 3–4. The officer testified that he was "reasonably sure" that the suspect was unarmed. *Id.* The officer relied on a Tennessee law that allowed officers to use any means necessary to effect an arrest regardless of the circumstances. *Id.* at 4. The Supreme Court concluded that the statute was unconstitutional in so far as it permitted the use of deadly force to "seize an unarmed, nondangerous suspect." *Id.* at 11. In contrast, such use of force would be reasonable if the officer had "probable cause to believe that the [escaping] suspect pose[d] a threat of serious physical harm." *Id.*

*Garner* does not provide clearly established law in "the specific context of th[is] case," *Lee*, 284 F.3d at 1194, because although Haynes was unarmed, we must assess reasonableness based on the facts known to the officer at the time. *See Graham*, 490 U.S. at 396. It would not have been clear to a reasonable officer in Deputy Garner's position that Haynes was unarmed and nondangerous. Deputy Garner arrived at the cookout after hearing an altercation from next door, and as he was exiting his car, he heard people shouting that Haynes had a firearm. Haynes jumped in a car, ignoring Deputy Garner's calls to stop, and accelerated the car in Deputy Garner's direction coming within a few feet of hitting him. A reasonable officer in Deputy Garner's position could have concluded, particularly in the context of the "tense, uncertain, and rapidly evolving" situation, *Graham*, 490 U.S. at 397, that Haynes was armed and posed a threat of immediate harm. Therefore, "in the specific set of circumstances at issue," *Youmans*, 626 F.3d at 563, it would not have been clear to a reasonable officer in Deputy Garner's position that *Garner* prohibited using the patrol car to stop Haynes's flight.[1]

Haynes argues that our decision in *Gaillard v. Commins*, 562 F. App'x 870 (11th Cir. 2014), shows that *Garner* clearly establishes a violation of the Fourth

---

[1] On the one hand, Haynes's non-life-threatening injuries, including a concussion, a laceration on his lip, and a few abrasions could show that Deputy Garner used moderate, non-deadly force rather than the deadly force at issue in *Garner*. On the other hand, Haynes's assertion that the car was traveling at 60 miles per hour could support a finding of deadly force. But as already explained, even if Deputy Garner used deadly force, *Garner* does not provide clearly established law and Deputy Garner is entitled to qualified immunity.

Amendment.[2] In *Gaillard*, we decided that *Garner* served as clearly established law when the officer uses deadly force by hitting an unarmed suspect fleeing on foot with a police car. *Gaillard*, 562 F. App'x at 877. But we also explained that "*Garner* does not constitute clearly established law for cases where, for example, the officer was threatened with a deadly weapon or when a felon is 'set on avoiding capture through vehicular flight and persons in the immediate area are at risk from that flight.'" *Id.* at 876 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 200 (2004)). *Garner* does not clearly establish a constitutional violation when the suspect has threatened the officer, and the officer reasonably believes that the fleeing suspect is armed and poses a threat to the officer or others.

## IV.   CONCLUSION

We conclude that Deputy Garner is entitled to qualified immunity, and therefore, the judgment of the district court is **AFFIRMED.**

---

[2] *Gaillard* itself could not have put Deputy Garner on notice because it was decided on April 7, 2014, after the events at issue here, which took place on May 12, 2013, and because it is unpublished, non-binding precedent. *See Gilmore*, 738 F.3d at 277; 11th Cir. R. 36-2.