Daniel **WALL-DESOUSA**, Scott Wall-DeSousa, Plaintiffs-Appellants,

v.

**FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES**, et al., Defendants,

Maureen Johnson, Chief, Bureau of Records, Florida Department of Highway Safety and Motor Vehicles, Division of Motorist Services, in her individual capacity, Clayton Boyd Walden, Director of Florida Department of Highway Safety and Motor Vehicles, Division of Motorist Services, in his individual capacity, Dianne Bowman, Supervisor of the Brevard County Tax Collector's Office in Indian Harbour Beach, in her individual capacity, Defendants-Appellees.

No. 16-10410

United States Court of Appeals, Eleventh Circuit.

(June 2, 2017)

William J. Sheppard, Bryan E. DeMaggio, Matthew R. Kachergus, Elizabeth Louise White, Jesse B. Wilkison, Sheppard White Kachergus & DeMaggio, PA, Jacksonville, FL, for Plaintiffs-Appellants

Anne F. McDonough, Katelyn Brooke Wright, Office of the Attorney General, Civil Litigation, Tampa, FL, for Defendants-Appellees Maureen Johnson, Clayton Boyd Walden

Michael J. Roper, Frank Mari, Bell & Roper, PA, Orlando, FL, for Defendant-Appellee Dianne Bowman

Before TJOFLAT, HULL, and O'MALLEY,* Circuit Judges.

HULL, Circuit Judge:

Plaintiffs Daniel Wall-DeSousa and Scott Wall-DeSousa (the "Wall-DeSousas") appeal the district court's dismissal of their second amended complaint for failure to state a claim pursuant to Federal Rule

---

* Honorable Kathleen M. O'Malley, United States Circuit Judge for the Federal Circuit, sitting by designation.

of Civil Procedure 12(b)(6). The Wall-DeSousas brought suit under 42 U.S.C. § 1983, alleging First Amendment retaliation claims against defendants Maureen Johnson, Clayton Walden, and Dianne Bowman (the "defendants"). The defendants, as agents of the State of Florida, defended on the basis of qualified immunity.

After review, and with the benefit of oral argument, we must affirm the district court's dismissal of the Wall-DeSousas' second amended complaint.

## I. BACKGROUND

### A. The Parties

The Wall-DeSousas describe themselves as a same-sex, married couple living in Brevard County, Florida. Defendant Bowman is the supervisor of the Indian Harbour Beach office of the Brevard County Tax Collector. Defendant Johnson is the Chief of the Bureau of Records for the Florida Department of Highway Safety and Motor Vehicles ("DHSMV"), Division of Motorist Services. Defendant Walden is the Director of the DHSMV. According to the second amended complaint, at all relevant times, the defendants acted under color of state law.

### B. Factual Background

On December 6, 2013, the Wall-DeSousas legally married in New York state. Before their marriage, the couple's names were Daniel DeSousa and Scott Wall. When Daniel and Scott married, they both changed their surnames to Wall-DeSousa. Their New York state marriage license reflected this change. The marriage license did not indicate whether the Wall-DeSousas were a same-sex or opposite-sex couple.

Later in December, the Wall-DeSousas returned to Florida. On December 27, 2013, the Wall-DeSousas visited a Social Security Administration office in Melbourne, Florida and successfully obtained social security cards with the surname "Wall-DeSousa." Thereafter, Daniel went to the Brevard County Tax Collector's Office in Palm Bay, Florida, to change the surname (at that point, "DeSousa") on his Florida driver's license. The Palm Bay office issued Daniel a Florida driver's license with the surname "Wall-DeSousa."

Scott also attempted to change the surname (at that point, "Wall") on his Florida driver's license, but he went the Brevard County Tax Collector's Office in Indian Harbour Beach, Florida—where defendant Bowman is the supervisor—to do so. At the Indian Harbour office, Scott presented defendant Bowman with his new social security card and the Wall-DeSousas' New York state marriage license. Defendant Bowman allegedly refused to issue Scott a new driver's license and "tossed the marriage certificate back to [him]," indicating that it could not be used to support a name change on a Florida driver's license under Florida law. At the time, Florida law, Fla. Stat. § 741.212 (2013), prohibited the recognition of out-of-state same-sex marriages, providing that:

> Marriages between persons of the same sex entered into in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction ... are not recognized for any purpose in this state.
>
> The state, its agencies, and its political subdivisions may not give effect to any public act, record, or judicial proceeding of any state, territory, possession, or tribe of the United States or of any other jurisdiction, either domestic or foreign, or any other place or location respecting either a marriage or relationship not recognized [by the State of

Florida] or a claim arising from such a marriage or relationship.

Fla. Stat. § 741.212(1), (2) (2013). Accordingly, at the time, defendant Bowman followed the law in not recognizing Scott's out-of-state same-sex marriage.

After denying Scott's request to change his driver's license, defendant Bowman allegedly called the Palm Bay office in order to have Daniel's driver's license canceled. The Palm Bay office did not cancel Daniel's driver's license.

On August 21, 2014, the United States District Court for the Northern District of Florida ruled that the Florida law in § 741.212 was unconstitutional and issued a preliminary injunction enjoining its enforcement. Brenner v. Scott, 999 F.Supp.2d 1278, 1290-92 (N.D. Fla. 2014). The district court stayed the issuance of its preliminary injunction until ninety-one days after the Supreme Court's decision on then-pending stay applications in three separate same-sex marriage cases. Id. at 1292. On October 6, 2014, the Supreme Court denied those stay applications. See Schaefer v. Bostic, —— U.S. ——, 135 S.Ct. 308, 190 L.Ed.2d 140 (2014); Smith v. Bishop, —— U.S. ——, 135 S.Ct. 271, 190 L.Ed.2d 139 (2014); Herbert v. Kitchen, —— U.S. ——, 135 S.Ct. 265, 190 L.Ed.2d 138 (2014). This meant that the district court's stay of its preliminary injunction would be lifted on January 6, 2015 (ninety-one days after October 6, 2014) and thus that, beginning on January 6, 2015, enforcement of § 741.212 would be enjoined. However, up until January 6, 2015, § 741.212 remained legally in effect.

In early October 2014, an assistant to the Brevard County Tax Collector took the Wall-DeSousas' marriage certificate to the DHSMV in Tallahassee, Florida for guidance on the surname issue. After doing so, the assistant informed Scott that, because the marriage certificate was not marked "same-sex," Scott could use the document to obtain a driver's license with the "Wall-DeSousa" surname in a county other than Brevard. The assistant, however, informed Scott that she could not personally issue him a driver's license because she now knew that his marriage was between same-sex partners. The Brevard County assistant advised Scott to try to obtain his driver's license in another county because "the tax collector in another county would not be aware nor would they be able to ask."

On October 15, 2014, Scott traveled to a new county—Orange County, Florida—to obtain a new driver's license. A clerk with the Orange County Tax Collector's Office informed Scott that the DHSMV had a "don't ask, don't tell" policy in place. Scott successfully obtained a driver's license reflecting his new surname by presenting his marriage certificate, his social security number, and a car insurance bill.

On October 30, 2014, the Wall-DeSousas spoke to a local news anchor on a televised broadcast about their difficulties obtaining driver's licenses, the DHSMV policy, and how other people could deal with the same issue. According to the second amended complaint, defendant Bowman saw the news story and then contacted the DHSMV to request that it cancel the Wall-DeSousas' driver's licenses.

On November 5, 2014, the DHSMV sent each of the Wall-DeSousas an individually addressed copy of a single letter indicating that the Wall-DeSousas' driver's licenses would be canceled indefinitely as of November 25, 2014. The DHSMV letter stated that, "[b]ecause same sex marriage certificates are not recognized as valid in Florida under 741.212, F.S., . . . we are unable to change your last name." Defendants Johnson and Walden both signed the letter. On November 7, 2014, the Wall-DeSousas received the letter.

On November 11, 2014, the Wall-DeSousas reached back out to the same local news station for a follow-up news story. A follow-up news story aired later that day.

On November 13, 2014, Scott asked the DHSMV to reconsider its decision to cancel the Wall-DeSousas' driver's licenses. The DHSMV representative, in a "scripted manner," told Scott to apply for an administrative hearing. The DHSMV representative indicated that the DHSMV and the Tax Collector's offices were "following the letter of the law but not the spirit of the law."

On November 24, 2014, the day before the DHSMV planned to cancel the Wall-DeSousas' driver's licenses, Scott returned to the Indian Harbour Beach office to change his driver's license back to his premarriage surname. At the office, defendant Bowman told Scott that he could only receive a temporary courtesy license, valid for ninety days, which would be canceled if he did not present a passport reflecting his new surname within that time period. Separately, Daniel returned his own driver's license by cutting it in half and sending it to the DHSMV, in accordance with the DHSMV's license-return policy.

On January 5, 2015, the DHSMV issued a "technical advisory," which directed all DHSMV offices to, "[e]ffective January 6, 2015," recognize "all marriage certificates as sufficient proof to complete a name change on a driver license or identification card." January 6, 2015 marked the first day in which the Florida district court's stay of its preliminary injunction was lifted and the preliminary injunction, barring the enforcement of § 741.212, took effect.

On January 13, 2015, the Wall-DeSousas both successfully obtained licenses with the "Wall-DeSousa" surname at the Palm Bay office in Brevard County.

## C. Procedural History

On November 25, 2014, the Wall-DeSousas filed a complaint against the governor of Florida, the then-director of the DHSMV, and defendant Bowman, alleging a variety of constitutional claims. On January 23, 2015, the Wall-DeSousas filed a first amended complaint, naming Bowman, Johnson, Walden, and four Jane Does as defendants and asserting a single First Amendment retaliation claim under 42 U.S.C. § 1983. The defendants responded by filing motions to dismiss. On July 16, 2015, the district court dismissed the Wall-DeSousas' first amended complaint without prejudice.

On July 31, 2015, the Wall-DeSousas filed a second amended complaint—the operative complaint for purposes of this appeal. The Wall-DeSousas brought a First Amendment retaliation claim under § 1983 against defendants Johnson and Walden ("Count 1") and a First Amendment retaliation claim under § 1983 against defendant Bowman ("Count 2"). The second amended complaint alleged that defendants Johnson and Walden, in sending the November 5, 2014 letter from the DHSMV, retaliated against the Wall-DeSousas by seeking to cancel their driver's licenses in response to the Wall-DeSousas' exercise of constitutional activity—speaking out on television on October 30, 2014. The second amended complaint also alleged that defendant Bowman retaliated against the Wall-DeSousas by "advis[ing]" the DHSMV to cancel their driver's licenses in response to the same activity. The defendants filed motions to dismiss, asserting qualified immunity as a defense.

On January 19, 2016, the district court granted the defendants' motions to dismiss, holding that the defendants were entitled to qualified immunity. The district court, in effect, determined that the facts alleged in the Wall-DeSousas' second

amended complaint did not specify conduct causing a constitutional violation. Rather, the defendants' conduct was caused by, and constituted legal enforcement of, § 741.212, which was still valid at the time. The Wall-DeSousas timely appealed.

## II. APPLICABLE LAW

### A. Standard of Review

"We review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." Cinotto v. Delta Air Lines Inc., 674 F.3d 1285, 1291 (11th Cir. 2012). "A public official's entitlement to qualified immunity presents a purely legal question, subject to de novo review." Harris v. Bd. of Educ., 105 F.3d 591, 595 (11th Cir. 1997) (per curiam).

### B. Pleading Requirements

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965).

### C. Qualified Immunity

A complaint may "be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." Quiller v. Barclays American/Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984), aff'd on reh'g en banc, 764 F.2d 1400 (11th Cir. 1985) (en banc).

The defense of qualified immunity "protects government officials performing discretionary functions ... from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996). "Once an officer raises the defense of qualified immunity, the plaintiff bears the burden to show that the officer is not entitled to it." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010). To overcome qualified immunity at the motion-to-dismiss stage, the plaintiff must plead sufficient facts to allege that: (1) the defendant violated a constitutional right; and (2) the right was clearly established at the time of the alleged violation. Morris v. Town of Lexington, 748 F.3d 1316, 1322 (11th Cir. 2014); see also Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999). A court may begin the qualified immunity analysis with either prong, at its discretion. Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). The analysis is limited to "the facts and the law present at the time that public officials make their decisions and does not take into account later facts or changes in the law." Jackson v. Humphrey, 776 F.3d 1232, 1242 (11th Cir. 2015).

Qualified immunity provides "immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); see also id. ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant plead-

ing qualified immunity is entitled to dismissal before the commencement of discovery.").

## III. DISCUSSION

Below, we address whether the second amended complaint sufficiently alleges a violation of a clearly established constitutional right.

The Wall-DeSousas allege that the defendants retaliated against them for exercising their First Amendment rights.[1] "To establish a First Amendment retaliation claim, a plaintiff must show that (1) her speech was constitutionally protected; (2) she suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the adverse conduct and the protected speech." Castle v. Appalachian Tech. Coll., 631 F.3d 1194, 1197 (11th Cir. 2011).

### A. Protected Speech

■ The Wall-DeSousas must first adequately allege that the speech at issue—the October 30, 2014 televised interview—is entitled to First Amendment protection.

Speech that concerns public issues occupies the "highest rung of the hierarchy of First Amendment values and is entitled to special protection." Snyder v. Phelps, 562 U.S. 443, 452, 131 S.Ct. 1207, 1215, 179 L.Ed.2d 172 (2011) (quoting Connick v. Myers, 461 U.S. 138, 145, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983)) (internal quotation marks omitted). "Speech deals with matters of public concern when it can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'" Id. at 453, 131 S.Ct. at 1216

(quoting Connick, 461 U.S. at 146, 103 S.Ct. at 1690).

Here, the Wall-DeSousas' October 30, 2014 televised interview discussed the Wall-DeSousas' explanation of the difficulties that they faced—and that other same-sex couples might face—in using same-sex documentation for the purposes of obtaining a new driver's license in Florida. The broad dissemination of the televised interview, as well as the interview's attempt to inform others about the impact of local law, clearly touch upon matters of public concern. Accordingly, the Wall-DeSousas' October 30, 2014 televised interview enjoys First Amendment protection.

### B. Adverse Conduct

■ The Wall-DeSousas also must sufficiently allege that the retaliatory conduct that they suffered would "likely deter a person of ordinary firmness from engaging" in similar future speech. Castle, 631 F.3d at 1197; see also Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005) (adopting this standard for the Eleventh Circuit). This is an objective standard which does not focus on whether a plaintiff was actually deterred, though a plaintiff's actions may serve as an example of what a reasonable person would have done. See Bennett, 423 F.3d at 1255. Even though a retaliatory act's "effect on freedom of speech may be small, ... it need not be great in order to be actionable." Id. at 1254 (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)).

The second amended complaint alleges the following adverse conduct: Scott was "forced to accept a driver's license in his maiden name," and Daniel had to go "without a driver's license for 49 days." Accept-

---

1. The Wall-DeSousas do "not reassert a challenge to Florida's ban on same-sex marriage. Rather their argument is that Florida's then-valid same-sex marriage ban was applied in a retaliatory manner to punish the Wall-DeSousas for engaging in conduct protected by the First Amendment."

ing these allegations as true, the Wall-DeSousas allege harms that would reasonably dissuade an ordinary person from speaking out. It is clear that the loss of a driver's license would make a number of basic daily functions of modern life appreciably more difficult for the ordinary person. Cf. Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971) ("Once licenses are issued ... their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees."). We also recognize the harm in being denied the opportunity to choose one's preferred legal name where such a denial creates inconsistencies in a person's legal name across differing forms of government identification, as well as the harm in being denied the opportunity to obtain a driver's license in that preferred legal name. In this case, it is sufficient to say that the Wall-DeSousas' alleged harms satisfy their burden at this Rule 12(b)(6) stage of litigation.

## C. Causation

The Wall-DeSousas must also sufficiently allege facts to support a finding of a causal connection between their protected speech and the adverse conduct that they suffered. "[T]o establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." Castle, 631 F.3d at 1197. This in turn requires that the defendants had actual knowledge of the plaintiffs' protected speech, which "can be established by circumstantial evidence." Brungart v. Bell-

South Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000), cert. denied, 532 U.S. 1037, 121 S.Ct. 1998, 149 L.Ed.2d 1001 (2001).[2]

## D. Clearly Established Law

■ Ultimately, we need not decide if the Wall-DeSousas have alleged sufficient facts regarding a causal connection as required to state a constitutional violation. This is because, to survive dismissal in this case, the Wall-DeSousas must additionally allege sufficient facts to overcome the second prong of qualified immunity, i.e., clearly established federal law.

In this regard, prior Supreme Court and circuit precedent is instructive. In Mt. Healthy v. Doyle, the Supreme Court observed that a state official may act lawfully even where in part motivated by some unlawful motive so long as, in the absence of the unlawful motive, the official would have taken the same action pursuant to an existing lawful motive. 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

In Foy v. Holston, applying Mt. Healthy in the context of qualified immunity, this Court held that the existence of an unlawful motive will not defeat qualified immunity so long as the state official would have taken the challenged action pursuant to a lawful reason. 94 F.3d 1528, 1532 (11th Cir. 1996). In Foy v. Holston, this Court explained:

[W]e accept that Plaintiffs have presented a triable issue of fact on whether Defendants were motivated by a hostility toward [Plaintiffs'] religion.... In addition, we, for now, resolve this disputed issue by making an assumption in Plain-

**2.** At this Rule 12(b)(6) stage, the Wall-DeSousas allege that circumstantial evidence shows that defendants Johnson and Walden had actual knowledge of the Wall-DeSousas' October 30, 2014 televised interview; namely, defendants Johnson and Walden both signed the November 5, 2014 letter mere days after the Wall-DeSousas' October 30, 2014 televised interview. As to defendant Bowman, the Wall-DeSousas allege, upon information and belief, that defendant Bowman saw the October 30, 2014 televised interview.

tiffs' favor. So, the question becomes whether this assumption—that is, Defendants' acts were motivated some by prejudice against Plaintiffs' religion—is a bar to immunity. Id. at 1533. This Court further emphasized the "well established" principle "that state officials can be motivated, in part, by a dislike or hostility toward a certain protected class to which a citizen belongs and still act lawfully." Id. at 1534 (citing Vill. of Arlington Hts. v. Metro. Housing Dev. Corp., 429 U.S. 252, 269-71, 97 S.Ct. 555, 566 n.21, 50 L.Ed.2d 450 (1977)). This Court added that, "[f]or example, state officials act lawfully despite having discriminatory intent, where the record shows they would have acted as they, in fact, did act even if they had lacked discriminatory intent." Id. (citing Mt. Healthy, 429 U.S. at 286-87, 97 S.Ct. at 576). In such circumstances, it is not clearly established that the state official's action was in violation of the plaintiff's constitutional rights. Id. at 1534-35.

Here, three things in the record, taken together, undisputedly establish that the defendants were motivated, at least in part, by lawful considerations. First, by its own language, the second amended complaint alleges that defendants Johnson and Walden retaliated against the Wall-DeSousas by signing and sending the November 5, 2014 driver's license cancellation letter. From the Wall-DeSousas' own complaint, we know that the defendants signed and sent the Wall-DeSousas this November 5, 2014 letter stating why their driver's li-

censes were being canceled. Second, the text of the letter is in the record,[3] and that text expressly and exclusively bases the defendants' cancellation of the Wall-De-Sousas' drivers licenses on the enforcement of the § 741.212 law.[4] The text of the letter even cites the Florida statute. Third, the judicial record establishes that § 741.212 was still valid at the time the defendants' letter was sent. Thus, the record shows that lawful considerations at least partially caused the cancellation of the Wall-DeSousas' driver's licenses.

Accordingly, during the relevant periods in this case, Florida law precluded same-sex marriage, the November 5, 2014 cancellation letter cited that law, and each of the defendants "in fact, did possess a substantial lawful motive for acting as [they] did act." Foy, 94 F.3d at 1534. When an adequate lawful motive is present, even an assumed fact that an unlawful, retaliatory motive also exists does not preclude qualified immunity.

Here, the allegations of the second amended complaint, taken with the text of the November 5, 2014 letter canceling the Wall-DeSousas' driver's licenses based on § 741.212, show substantial lawful intent without ruling out some unlawful intent, too. It is undisputed that, at the time of the November 5, 2014 letter, the enforcement of § 741.212 was not enjoined. Florida law did not recognize out-of-state same-sex marriages and driver's licenses based on the Wall-DeSousas' out-of-state mar-

---

**3.** Defendants Johnson and Walden attached copies of the November 5, 2014 letter to their motion to dismiss. Although the text of this letter is not included within the second amended complaint, this Court is permitted to consider the letter in its review. See Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007) (explaining that this Court may look beyond the face of a complaint on a motion to dismiss "in cases in

which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss").

**4.** Defendant Bowman had no authority to cancel the Wall-DeSousas' driver's licenses or any supervisory authority.

riage license. Once enforcement of § 741.212 was enjoined on January 6, 2015, the requested driver's licenses were issued shortly thereafter.[5]

Given our precedent, the circumstances alleged, and the state of the Florida law at the time, we cannot say that the district court erred in dismissing this case against the defendants based on qualified immunity. See Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576; Jackson, 776 F.3d at 1240; Foy, 94 F.3d at 1533-36. This is not a case where no legitimate reason in fact motivated the defendants' conduct. Importantly too, at the time of the conduct here, it was not clearly established federal law that the defendants could not act as they did. Jackson, 776 F.3d at 1240-41; Foy, 94 F.3d at 1535.[6]

## IV. CONCLUSION

For all of these reasons, we affirm the district court's dismissal of the Wall-De-Sousas' second amended complaint.

**AFFIRMED.**

O'MALLEY, Circuit Judge, dissenting:

Because the district court's order conflates the mere existence of a lawful basis with whether a defendant seeking qualified immunity was actually motivated by that lawful basis, and today's opinion affirms that error, I must respectfully dissent.

It is well-established under Eleventh Circuit law that, to find a lack of causation for purposes of qualified immunity, "it is not sufficient for [a defendant] to establish that there exists a lawful basis." Stanley v. City of Dalton, 219 F.3d 1280, 1296 (11th Cir. 2000). "Rather, in order for the Foy analysis to apply, [the defendant] himself must have been actually motivated, at least in part, by that lawful basis." Id. (emphasis added).

This question of actual motivation is a "fact and circumstances"-specific inquiry, not appropriately decided at the motion to dismiss stage. Foy v. Holston, 94 F.3d 1528, 1534–35 (11th Cir. 1996) ("Where the facts assumed for summary judgment purposes ... show mixed motives ... the defendant is entitled to immunity.") (emphasis added); see also Stanley, 219 F.3d at 1296 (noting that "the record" must "undisputably establish[ ] that the defendant in fact was motivated, at least in part,

---

**5.** The dissent suggests that a partial lawful motivation can never be decided on a motion to dismiss. But this ignores the allegations in the Wall-DeSousas' second amended complaint, the text of the defendants' letter which is properly before the Court (see n.3, infra), and the fact that § 741.212 remained the law at the time the letter was sent. Although qualified immunity defenses are sometimes resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity if the undisputed facts in the plaintiffs' own complaint show that the defendants acted lawfully. See Behrens v. Pelletier, 516 U.S. 299, 309, 116 S.Ct. 834, 840, 133 L.Ed.2d 773 (1996) ("At [the motion to dismiss] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.' ").

The dissent suggests that the Wall-DeSousas need discovery. But the text of the letter is evidence of at least one of the defendants' motivations. See Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). And even if the Wall-DeSousas could show an improper motive too in discovery, here we have assumed that fact in the Wall-DeSousas' favor.

**6.** Because the Wall-DeSousas fail to allege that the constitutional right at issue was clearly established, we do not decide whether the defendants violated that right for purposes of the first prong of the qualified immunity analysis. See Pearson, 555 U.S. at 236, 129 S.Ct. at 818; Morris, 748 F.3d at 1322.

by lawful considerations" for <u>Foy</u> to apply); <u>see generally</u> <u>Bogle v. McClure</u>, 332 F.3d 1347, 1356 (11th Cir. 2003) (finding a lack of "record evidence" to "indicate that [defendants] were in fact motivated, at least in part, by objectively valid reasons"); <u>Jackson v. Humphrey</u>, 776 F.3d 1232, 1240 (11th Cir. 2015) (relying on "the record presented at summary judgment" to find that defendants were motivated, "at least in part," by "a lawful reason").

The cases on which the majority relies to affirm the district court's reasoning only serve to highlight this point; each case involved a factual record developed well past the point of discovery. <u>See</u> <u>Foy</u>, 94 F.3d at 1531 (decided on appeal from a denial of summary judgment); <u>Jackson</u>, 776 F.3d at 1234 (decided on appeal from a grant of summary judgment); <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 276, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (decided on appeal from a bench trial). Despite this clear line of precedent, today's opinion amends <u>Foy</u>, broadening its holding to encompass motions to dismiss for the first time.

Absent a fully developed record, the majority can point only to the November 5th letter, and its references to the § 741.212 law, to find both existence <u>and</u> actual motivation vis-à-vis lawful motive. If this case were before us from a grant of summary judgment, and the Wall-DeSousas had failed to provide any evidence rebutting the letter, that finding would be reasonable. But where the Wall-DeSousas have not been afforded the opportunity for discovery, it is premature to fault them for failing to provide evidence showing solely illicit intent on the part of the defendants.

Reading <u>Foy</u> broadly would effectively immunize all defendants who luck into lawful post-hoc explanations for otherwise illegally-motivated behavior. Even where flagrant smoking guns exist, plaintiffs will never be able to discover them. And where, by sheer providence, the plaintiffs already have a smoking gun in hand, how can they use it to rebut a motion to dismiss if its contents are disputed? <u>See</u> <u>Fin. Sec. Assurance, Inc. v. Stephens, Inc.</u>, 500 F.3d 1276, 1284 (11th Cir. 2007).

I acknowledge wholeheartedly that the Wall-DeSousas' complaint is not a model of clarity, replacing concrete and particularized allegations with conclusory generalities. Had the district court rejected their complaint as failing outright to provide "sufficient factual matter" to satisfy the straightforward requirements of <u>Iqbal</u> and <u>Twombly</u>, I would have few qualms in affirming. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); <u>see also</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). By relying instead on <u>Foy</u>, the district court's analysis begins a dangerous practice, which today's opinion ratifies. I respectfully dissent.